# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF EMERYVILLE; EMERYVILLE
REDEVELOPMENT AGENCY,
　　　　　*Plaintiffs-Appellees,*

v.

HOWARD F. ROBINSON, JR.;
CHRISTOPHER D. ADAM; HILARY A.
JACKSON, individually and as
successors to Mary Lou Adam as
Trustee of (a) Trust A /u/t/o the
Adam Family Trust Dated October
10, 1997 and related on October
14, 2003 and (b) the Adam Family
Trust, Survivor's Share,
　　　　　*Intervenors-Appellees,*

THE SHERWIN-WILLIAMS COMPANY,
an Ohio corporation,
　　　　　*Defendant-Appellant.*

No. 09-15018

D.C. No.
3:99-cv-03719-
WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
February 10, 2010—San Francisco, California

Filed September 15, 2010

Before: Cynthia Holcomb Hall, David R. Thompson, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Hall

14135

**COUNSEL**

William D. Wick, Wactor & Wick LLP, Oakland, California, for the defendant-appellant.

Robert P. Doty, Cox, Castle & Nicholson LLP, San Francisco, California, for the plaintiff-appellee.

Henry S. Hewitt, Erickson, Beasley & Hewitt LLP, Oakland, California, for intervenor-appellee Howard F. Robinson, Jr.

Carolyn Nelson Rowan, Miller Starr Regalia, Walnut Creek, California, for intervenors-appellees Adam and Jackson.

**OPINION**

HALL, Circuit Judge:

The Sherwin-Williams Company ("Sherwin-Williams") appeals from an order of the district court granting in part, and denying in part, a motion for declaratory and injunctive relief. Sherwin-Williams brought the motion to enforce a 2001

court-approved settlement (the "2001 Settlement"), which it negotiated with appellees City of Emeryville and the Emeryville Redevelopment Agency (collectively, "Emeryville") to resolve a lawsuit filed by Emeryville in 1999 in the Northern District of California pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675 ("CERCLA"). That suit (the "Site A litigation") sought to recover clean-up costs as to a 14.5-acre parcel ("Site A") where Sherwin-Williams manufactured, stored, and distributed pesticides from the 1920s through the 1960s. Under the terms of the 2001 Settlement, Sherwin-Williams paid Emeryville $6.5 million for Site A clean-up, and agreed to a cost-sharing formula for future groundwater remediation.

In the instant action, the district court concluded that the release provision in the 2001 Settlement was intended to bar the claims Emeryville is currently asserting against Sherwin-Williams in a separate action, which the Emeryville Redevelopment Agency filed in 2006 in Alameda County Superior Court (the "State Court Action") to recover $32 million in clean-up costs from Sherwin-Williams and others for a different parcel ("Site B"), but only to the extent the Site B claims arose from or were related to contaminants that "emanated from" Site A.

Appellees and intervenors Howard F. Robinson, Jr., Christopher D. Adam, and Hilary A. Jackson (collectively, "Intervenors") are recent or current owners of portions of Site B, who were also named as defendants in the State Court Action, but they were not parties to and did not have notice of the Site A litigation or the 2001 Settlement. Intervenors are also, however, cross-claimants in the State Court Action, who were allowed to intervene in this case to prevent the extinguishment of rights of contribution they seek to enforce against Sherwin-Williams for contamination of their properties at Site B. In the instant action, the district court ruled that the contribution bar in the 2001 Settlement does not apply to the Intervenors' cross-claims against Sherwin-Williams.

The district court had jurisdiction under the express terms of the 2001 Settlement, pursuant to the All Writs Act, 28 U.S.C. § 1651. *See Sandpiper Village Condominium Ass'n, Inc. v. Louisiana-Pacific Corp.,* 428 F.3d 831, 841 (9th Cir. 2005). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.   Factual and Procedural Background

This case concerns the contamination and clean-up of two adjacent sites in Emeryville, California, a small Northern California city that was once the home of heavy industry, but currently—after decades of effort by an aggressive local redevelopment agency—hosts a plethora of "big box" stores, hotels, restaurants, and numerous other retail outlets. Site A consists of the properties commonly known as the former Sepulveda Property (5600 Shellmound Street), the former McKinley Property (5500 Shellmound Street), the former Elementis Property (4650 Shellmound Street), the Old Shellmound Street Right of Way, and additional properties south of 4650 Shellmound Street. Site B borders Site A on the north, and consists of the C&S Enterprise Property (1535 Powell Street), the Koeckritz Property (5770 Shellmound Street), the Robinson Property (5760 Shellmound Street), and the Adam Property (1525 Powell Street and the Rail Spur Property).[1]

---

[1]A map delineating Sites A and B, and each of the individual properties located therein, is attached to this opinion as "Attachment A." This map indicates that the Site A property on which Sherwin-Williams operated was the "Former Sherwin-Williams Lime Sulfur Plant," which encompassed the Sepulveda, McKinley, and Elementis properties. The map also shows a separate Sherwin-Williams facility, the "Sherwin-Williams Sherwin Avenue Plant," which is located to the east of the southern third of Site A, on the other side of the Union Pacific Railroad tracks. Citing reports of the California Environmental Protection Agency, ("Cal/EPA"), Emeryville contends, in part, that lead-arsenic contaminants on Site B emanated from the Sherwin-Avenue Plant, not from Site A.

### A.    The 1999 Site A Litigation in the District Court

From the 1920s through the 1960s, Sherwin-Williams owned and occupied the northern third of Site A, and used the property for formulation, storage, and distribution of pesticides. In the late 1990s, significant soil and groundwater contamination was found on the former Sherwin-Williams property. In August 1999, Emeryville filed a lawsuit against Sherwin-Williams and other defendants, not including Intervenors, alleging that the defendants were responsible for contaminants "in the soil and groundwater at and beneath [Site A] and migrating from [Site A]." *See City of Emeryville v. Elementis Pigments*, 2001 WL 964230 (N.D. Cal. 2001). Emeryville sought cost recovery, contribution, and damages from the defendants under federal, state, and common law theories of liability.

### B.    The 2001 Settlement of the Site A Litigation

A mediated settlement of the Site A litigation was reached in November 2000, and approved by the district court in February 2001 in an order granting a "Motion for Approval of Settlement and Determination of Good Faith," which was filed by Emeryville, and joined by Sherwin-Williams. In the order approving the 2001 Settlement, the district court found that the Settling Defendants[2] were entitled to "such protection as is provided in" § 113(f) of CERCLA, 42 U.S.C. § 9613(f), and the California good faith settlement statute, Cal. Code Civ. P. §§ 877 and 877.6, as well as an order "dismissing the cross-claims asserted in the [Site A litigation], and barring contribution or equitable indemnity claims." Under the terms of the 2001 Settlement, Sherwin-Williams agreed to pay Emeryville a lump sum of $6.5 million, and agreed to share

---

[2]In addition to Sherwin-Williams, the Settling Defendants included the so-called Baker Hughes and Sepulveda parties to the 2001 Site A litigation.

future costs of ongoing response actions "arising from groundwater at, on, under, or emanating from" Site A.[3]

In return for remediation cost-sharing, the parties to the 2001 Settlement released one another "from any and all claims, demands, actions, and causes of action arising from or related to [Site A], including without limitation, claims arising from the release(s) of hazardous substances and/or contaminants at, on, under or emanating from [Site A], whether presently known or unknown, suspected or unsuspected," and waived the protections of California Civil Code section 1542. The parties specifically agreed that "[t]he releases provided herein shall not extend to any party or entity other than Emeryville, Sherwin-Williams, [and the other Settling Defendants]."

The district court retained jurisdiction to enforce the 2001 Settlement. The parties further agreed that the "prevailing party" in such a dispute would be entitled to recover reasonable attorney's fees and other costs.

## C.   The 2006 State Court Action as to Site B

In 2005, Emeryville began investigating contamination at Site B. A November 2005 report concluded that "[p]otential offsite sources of chemicals of concern" included the adjacent properties "formerly occupied by a Sherwin-Williams arsenic-based pesticide manufacturing facility" and that elevated arsenic at Site B's southern border was "most likely due to residually contaminated soil from former Sherwin-Williams pesticide manufacturing site."

---

[3]Specifically, Emeryville agreed to pay the first $200,000, Emeryville and Sherwin-Williams agreed to bear equally the next $1,314,000, and the parties agreed to bear subsequent costs "95% by Sherwin-Williams and 5% by Emeryville." There is no dispute that Sherwin-Williams made all payments required by the 2001 Settlement.

In May 2006, the Emeryville Redevelopment Agency filed the State Court Action, *Emeryville Redevelopment Agency v. Robinson*, No. RG06267594, alleging that Sherwin-Williams and other defendants were liable for "hazardous substances discharged, deposited, disposed of, or released onto or at [Site B] and/or emanating to and from [Site B]." The other defendants, including Intervenors and the City of Emeryville, each denied liability and filed cross-claims against Sherwin-Williams and each other, seeking contribution and/or indemnity.[4]

**D.    The Instant Proceedings to Enforce the 2001 Settlement**

On July 31, 2008, Sherwin-Williams commenced the instant action by filing a motion in the district court for the Northern District of California. In its motion, Sherwin-Williams sought to enforce the 2001 Settlement, including the release and contribution bar, and to obtain a dismissal with prejudice of the claims and cross-claims filed against it in the State Court Action. More specifically, with respect to the State Court Action, Sherwin-Williams sought an order (i) confirming that the 2001 Settlement released all of the claims asserted against it by Emeryville, and provided protection against any cross-claims for contribution asserted by Emeryville and the other parties; (ii) compelling the dismissal of the complaint and all cross-complaints against it, including those filed by Intervenors; and (iii) awarding attorney's fees and

---

[4]In its first amended complaint in the State Court Action, Emeryville seeks to acquire Robinson's property by eminent domain and to recover environmental remediation costs pursuant to the Polanco Redevelopment Act, Cal. Health & Safety Code, §§ 33459 et seq., and asserts state common law claims for public and private nuisance, trespass, and equitable indemnity. Robinson's cross-claims seek equitable indemnity and/or contribution from other defendants, including Sherwin-Williams. The Adams' property has already been acquired by Emeryville by eminent domain, but they also seek equitable indemnity and/or contribution from Sherwin-Williams and other defendants.

costs it incurred in filing the motion and defending itself. Emeryville opposed Sherwin-Williams's motion, and sought to recover its own fees and costs. Sherwin-Williams served its motion to enforce the 2001 Settlement on Intervenors and several other neighboring property owners.

Shortly thereafter, Intervenors sent letters to the district court indicating their desire to intervene in the instant action. On September 19, 2008, the district court granted twenty days for filing motions to intervene and responses to Sherwin-Williams's motion to enforce the 2001 Settlement. On October 9, 2008, Intervenors filed their motions to intervene pursuant to Federal Rule of Civil Procedure 24(a) (hereafter, "Rule 24(a)") and CERCLA § 113(i), 42 U.S.C. § 9613(i), along with a brief in opposition to Sherwin-Williams's motion to enforce the 2001 Settlement. A week later, all parties were heard on all pending motions.

In its final Amended Order entered on November 25, 2008 ("the Amended Order"), the district court granted Sherwin-Williams's motion to enforce the 2001 Settlement in part, and denied it in part. The motion was granted to the extent it sought confirmation that the release in the 2001 Settlement applied to the claims asserted against Sherwin-Williams by Emeryville in the State Court Action and dismissal of those claims, but only "insofar as those claims arise from or relate to contaminants that emanated from Site A." Sherwin-Williams's motion was denied to the extent it sought an order dismissing the cross-claims for contribution and/or indemnity filed by Intervenors and other defendants in the State Court Action. The district court denied both Sherwin-Williams's and Emeryville's requests for attorney's fees and costs.

Sherwin-Williams timely appealed from the Amended Order on December 23, 2008. Emeryville filed a notice of cross-appeal on January 26, 2009.[5]

---

[5]On March 4, 2009, Sherwin-Williams filed a further motion in the district court, ostensibly seeking enforcement of the Amended Order and

## II.    Discussion

Because Emeryville's cross-appeal has been dismissed, the issues remaining for decision are those raised by Sherwin-Williams, i.e., whether: (1) the district court erred by allowing Intervenors to intervene in this action; (2) as a result of the 2001 Settlement, the cross-claims for contribution in the State Court Action are barred by CERCLA § 113(f), 42 U.S.C. § 9613(f), or by the California statutes providing for confirmation of "good faith settlements," Cal. Civ. Code §§ 877 and 877.6; and (3) the district court erred in denying its request for attorney fees against Emeryville. We will address each of these issues in turn.

### A.

Rule 24(a) traditionally receives a liberal construction in favor of applicants seeking intervention.[6] *Arakaki v. Caye-*

---

contempt sanctions against Emeryville, but primarily challenging the district court's decision to deny its request for attorney's fees. The gist of Sherwin-Williams's motion was that Emeryville was acting in bad faith by refusing to dismiss outright any of its claims against Sherwin-Williams in the State Court Action, and was instead attempting to recast them as claims seeking recovery of costs for cleaning up contaminants *other than* those that "emanated from Site A." On April 7, 2009, the district court issued an order denying Sherwin-Williams's post-judgment motion, clarifying that the Amended Order did not include an injunction requiring Emeryville to dismiss its pending claims, and that it was merely a declaratory judgment as to the meaning of the 2001 Settlement. Because Sherwin-Williams did not appeal from this post-judgment order, and did not challenge the district court's ruling limiting the release to claims arising from or relating to contaminants that "emanated from Site A" in its opening brief, that issue is not before us on appeal. For the same reasons, Emeryville filed an unopposed motion to dismiss its protective cross-appeal on June 26, 2009. We hereby grant that motion.

[6]Rule 24(a) provides for intervention as of right, as follows:

> On timely motion, the court must permit anyone to intervene who:

*tano*, 324 F.3d 1078, 1083 (9th Cir. 2003). CERCLA § 113(i)[7] gives nonparties a right to intervene in pending litigation on essentially the same terms, except that the burden of proving that the existing parties will not adequately represent the interests of the proposed intervenor is on the government, not the proposed intervenor. *See United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010); *United States v. Union Electric*, 64 F.3d 1152, 1157-58, 1160 (8th Cir. 1995).

We review a district court's decision allowing intervention as of right pursuant to Rule 24(a) *de novo*, except for the element of timeliness, which we review for an abuse of discretion. *United States v. Alisal Water Corp.*, 370 F.3d 915, 918-19 (9th Cir. 2004).

Sherwin-Williams attacks the district court's order allowing intervention primarily on the basis that Intervenors have no "significantly protectable" interest at stake in the instant action, so as to warrant intervention as of right under Rule 24(a)(2) or CERCLA § 113(i). *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). Intervenors counter that they have significant, protectable state law

---

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

[7]In relevant part, CERCLA § 113(i), 42 U.S.C. § 9613(i), provides:

In any action commenced under [CERCLA] . . . in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

contribution rights as to clean-up costs at Site B, which would have been extinguished if the district court had granted Sherwin-Williams's motion to enforce the contribution bar in the 2001 Settlement against them.

**[1]** "The requirement of a significantly protectable interest is generally satisfied when 'the interest is protectable under some law, and [ ] there is a relationship between the legally protected interest and the claims at issue.' " *Arakaki*, 324 F.3d at 1084 (quoting *Sierra Club v. EPA*, 995 F.3d 1478, 1484 (9th Cir. 1993)). "[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Lockyer*, 450 F.3d at 441; *see also Alisal*, 370 F.3d at 919. "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." *Union Electric*, 64 F.3d at 1162; *see also Aerojet*, 606 F.3d at 1150.

**[2]** Applying these standards, we recently held that a contribution claim subject to extinction pursuant to CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2), is a "significantly protectable interest" warranting an order allowing third parties, in that case non-settling potentially responsible parties ("PRPs"), to intervene as of right pursuant to Rule 24(a)(2), upon timely application, in an action to obtain court approval for a CERCLA consent decree entered into by the United States and would-be "settling PRPs"—i.e., those who have agreed to pay a specific share of clean-up costs at a designated site, in exchange for protection against contribution claims from the non-settling PRPs and others regarding matters addressed in the settlement. *Aerojet*, 606 F.3d at 1149-51*; see also United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1394-96 (10th Cir. 2009); *Union Electric*, 64 F.3d at 1163-67.

As the *Aerojet* panel explained:

> [The] non-settling PRPs . . . in this case are potentially liable for response costs under § 107(a) of

> CERCLA . . . . § 113(f)(2) provides that approval of a consent decree will cut off their contribution rights under § 113(f)(1). The proposed consent decree in the EPA's suit against the [would-be settling PRPs] will therefore directly affect [the non-settling PRPs'] interest in maintaining their right to contribution. Further, because non-settling PRPs may be held liable for the entire amount of response costs minus the amount paid in a settlement, [they] have an obvious interest in the amount of any judicially-approved settlement.

606 F.3d at 1150 (citations omitted). The *Aerojet* panel also rejected the argument that the non-settling PRPs' contribution rights were too "contingent and speculative" because they had not yet been found liable for any response costs or made to bear a disproportionate share of response costs. *Id.*; *see also Union Elec.*, 64 F.3d at 1167 (although "inchoate" to the extent the value of any contribution claim has not been determined, the interest is nonetheless sufficiently certain to support intervention once a person has been identified as a PRP).

The *Aerojet* analysis and finding of a "significant, protectable interest" of the non-settling PRPs in that case apply with even greater force in the present context. Intervenors here faced imminent extinction of their state law rights of contribution for Site B clean-up costs when Sherwin-Williams sought enforcement of the 2001 Settlement of the Site A litigation—of which they had no effective prior notice, and as to which they were not PRPs—and they could not count on their adversary in the current State Court Action, Emeryville, to defend their interests in the federal court proceedings. Intervenor Robinson also faced the loss of substantial value of his property in the consolidated eminent domain proceedings.

In the present context, moreover, we do not face the "policy-based" concerns that allowing intervention might scuttle a recently negotiated, hard-won partial settlement of a

complex CERCLA action. *Cf. Aerojet*, 606 F.3d at 1151. Unlike the non-settling PRPs in *Aerojet*, the Intervenors here were not seeking to block court approval of a partial settlement of a cost-recovery action. They merely sought to ensure that the district court would give full and fair consideration to their arguments that, as neither PRPs nor parties to the Site A litigation, their contribution claims were not barred by the 2001 Settlement.

**[3]** As Intervenors observe, it is simply incongruous that Sherwin-Williams would bring a separate action to enforce the 2001 Settlement to *extinguish* the pending state law contribution and indemnity claims of both the City of Emeryville and other persons with no prior connection to the Site A litigation, and simultaneously assert that those other persons lacked a sufficient interest to intervene to oppose the motion. If the matter was important enough for Sherwin-Williams to bring the instant motion, it was surely important enough to warrant the intervention of the parties who stood to be directly and adversely affected. Thus, we conclude that the district court did not err in granting Intervenors' motion to intervene as of right pursuant to Rule 24(a)(2).**⁸**

**B.**

At the heart of this appeal is the issue whether the 2001 Settlement provides Sherwin-Williams with any "protection" against the cross-claims for contribution asserted by Intervenors and other defendants who are on the hook for Site B clean-up costs in the pending State Court Action.

---

**⁸**Because we conclude that Intervenors had a right to intervene in this action pursuant to Rule 24(a)(2), we need not decide whether permissive intervention would also have been proper under Rule 24(b). We note, however, that there was no prejudicial delay caused by Intervenors, who promptly sought leave to intervene and filed their motions approximately two months after Sherwin-Williams commenced this action.

Interpretation of a settlement agreement is a question of law subject to de novo review, *Congregation ETZ Chaim v. City of Los Angeles*, 371 F.3d 1122, 1124 (9th Cir. 2004), but we defer to any factual findings made by the district court in interpreting the settlement agreement unless they are clearly erroneous. *Labor/Community Strategy Ctr. v. Los Angeles County Metropolitan Trans. Auth.*, 263 F.3d 1041, 1048 (9th Cir. 2002). Our review of the district court's interpretation of CERCLA is also *de novo*. *California v. Montrose Chem. Corp.*, 104 F.3d 1507, 1512 (9th Cir. 1997).

In relevant part, the contribution bar in Section VIII of the 2001 Settlement provided:

> All matters that are the subject of the releases in Section VII and all matters alleged in the Complaint filed in the Action are defined to be "covered matters" within the meaning of CERCLA. With regard to any claims for costs, damages, or other relief asserted against the Settling Defendants by persons not party to this Agreement on account of the release(s) of hazardous substances at the Site, the Parties agree that Settling Defendants are, and each of them is, entitled to *such protection as is provided* in § 113(f) of CERCLA, 42 U.S.C. § 9613(f), California Code of Civil Procedure Sections 877 and 877.6, and any other applicable provision of federal or state law, as well as an order dismissing the cross-claims asserted in the Action and barring contribution or equitable indemnity claims.

(Emphasis added.) The 2001 Settlement further provided that "protection from contribution and/or indemnity claims . . . [is] integral and nondivisible to this Settlement Agreement." In addition, in the order section of the 2001 Settlement, the district court declared:

> The Court further finds that the Settling Defendants are entitled to protection from contribution and/or

indemnity claims pursuant to federal and state law, including but not limited to California Code Civil Procedure Sections 877 and 877.6.

All claims, cross-claims and/or counterclaims asserted in this matter against the Settling Defendants are hereby dismissed with prejudice as are all claims asserted against Emeryville by any of the Settling Defendants. Further claims, cross-claims or counterclaims against the Settling Defendants or any one of them *for matters addressed in the Settlement Agreement* are barred.

(Emphasis added.)

Sherwin-Williams contends that the district court erred by declining to interpret these provisions as establishing a contribution bar against all of the cross-claims asserted against it in the State Court Action. Emeryville and Intervenors respond that neither CERCLA nor California Code of Civil Procedure sections 877 and 877.6 provides Sherwin-Williams with "protection" against the cross-claims for contribution in that case. They contend that the federal and state contribution bars protect only against claims by non-parties who received notice of the settlement and had an opportunity to object before the settlement took effect. There is no dispute that Intervenors had no notice of the Site A litigation or the 2001 Settlement. Sherwin-Williams simply contends that lack of notice was no barrier to recognition of a contribution bar as to the cross-claims in the State Court Action. Emeryville and Intervenors have the better of this argument.

**1.**

The centerpiece of Sherwin-Williams's motion to enforce the 2001 Settlement was a contention that CERCLA § 113(f)*(2)*, 42 U.S.C. § 9613(f)(2), which bars all "claims for contribution regarding matters addressed in" a court-approved

settlement between any "person" and "the United States or a State," provided it with protection against the contribution claims alleged in the State Court Action. That argument hinged on an assertion that the district court had previously found that Emeryville was a "State" within the meaning of § 113(f)(2). It was only after the hearing on its motion to enforce the 2001 Settlement, when forced to concede that it had materially misrepresented the district court's prior ruling,[9] that Sherwin-Williams switched gears and—for the first time in its supplemental briefing after the hearing—began to rely on a nebulous argument that § 113(f)*(1)* provides district courts with "authority" to bar contribution claims of persons who neither had notice of nor participated in a CERCLA action that was resolved with a court-approved settlement.[10] Sherwin-Williams also suggests that § 113(f)(1) "preempts" the contribution claims Intervenors assert in the State Court Action. We reject these strained, eleventh-hour arguments, which ignore the plain language of § 113(f)(1), and cannot be reconciled with recent Supreme Court authority.

**[4]** On its face, CERCLA § 113(f)(1) expressly *authorizes* claims for contribution, and includes a "saving" clause that precludes any finding of preemption as to state law claims for contribution such as those asserted by Intervenors in the State Court Action, as follows:

---

[9]In fact, the district court had previously ruled that CERCLA's definition of "State" does not include municipalities. *See Elementis Pigments*, 2001 WL 964230 at *10. In its Amended Order in November 2008, the district court confirmed its prior ruling that Emeryville was not a "State" for any purpose under CERCLA. We express no opinion on that issue.

[10]By failing to address the issue in its opening brief except in a footnote, Sherwin-Williams waived any claim that CERCLA § 113(f)(2), bars Intervenors' cross-claims in the State Court Action. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (court of appeals will not review issues which are not argued specifically and distinctly in a party's opening brief, especially where a host of other issues are raised); *see also Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992) (contentions raised only in footnote in opening brief, without supporting argument and citation to relevant authorities, are deemed abandoned).

Any person my seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. *Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.*

42 U.S.C. § 9613(f)(1) (emphasis added). As such, § 113(f)(1) does not directly "provide" any protection *against* contribution claims, and cannot serve as the statutory basis for contribution protection referenced in the 2001 Settlement.

Sherwin-Williams does not even try to grapple with the plain language of § 113(f)(1). It simply claims that this section can be construed as giving district courts broad equitable authority to approve a settlement which, by its terms, bars third-party contribution claims like the ones Intervenors have asserted in the State Court Action. Apart from the important point that the 2001 Settlement is not such a settlement, Sherwin-Williams misconstrues the reach of § 113(f)(1). Sherwin-Williams also fails to explain why it is not within the "expansive" authority and discretion of the district court to determine that it would be inequitable to truncate Intervenors' contribution rights without prior notice, given Sherwin-Williams's failure to provide notice.

**[5]** In *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), the Supreme Court construed § 113(f)(1). The Court held that the section's first sentence, "the enabling

clause," grants a right of contribution only to PRPs who are or have been subject to an enforcement or cost-recovery action under §§ 106 or 107(a), 42 U.S.C. §§ 9606 or 9607(a). 543 U.S. at 165-68. "[A] private party who has not been sued under § 106 or § 107" may not "obtain contribution under § 113(f)(1) from other liable parties." *Id.* at 160-61; *see also Kotrous v. Goss-Jewett Co. of N. Cal., Inc.*, 523 F.3d 924, 931 (9th Cir. 2007). As relevant here, however, the *Aviall* court further held that:

> The sole function of the ["saving clause" in the last sentence of § 113(f)] is to clarify that § 113(f)(1) *does nothing to "diminish" any cause(s) of action for contribution that may exist independently of § 113(f)(1).* . . . The sentence, however, does not itself establish a cause of action; nor does it expand § 113(f)(1) to authorize contribution actions not brought "during or following" a § 106 or § 107(a) civil action; nor does it specify what causes of action for contribution, if any, exist outside § 113(f)(1).

*Aviall*, 543 U.S. at 166-67 (emphasis added).

The third sentence of § 113(f)(1) is the only one that addresses the court's authority with respect to contribution claims. To the extent Sherwin-Williams makes any argument based on the actual language of § 113(f)(1), it points to this sentence as the source of the district court's "authority" to approve a settlement which operates as a bar to contribution claims such as those asserted by Intervenors in the Site B litigation. Otherwise, the main thrust of Sherwin-Williams's argument is that CERCLA's "policy" favoring settlement gives district courts authority to bar any and all contribution claims that might impede settlement. We reject these atextual "policy" arguments for several reasons.

[6] First, Intervenors could not bring, and have not brought, a contribution claim under § 113(f)(1) because they

were never sued under §§ 106 or 107(a) with respect to Site A. Indeed, since they were not PRPs with respect to Site A, such a suit was not even a possibility. The claims they assert in the State Court Action as to Site B are therefore not contribution claims subject to the district court's authority under § 113(f)(1) to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." Because Intervenors' contribution claims do not come within § 113(f)(1), we believe it is clear that Congress did not intend that provision to be a source of judicial authority to bar such claims. This conclusion is only buttressed by § 113(f)(1)'s savings clause, which provides that the subsection does nothing to 'diminish' any cause of action for contribution that may exist independently of § 113(f)(1)—in this case, the state law contribution claims asserted in the State Court Action.

Even if CERCLA § 113(f)(1) could be construed as granting district courts the authority to approve settlements barring the contribution claims of non-parties, where appropriate, that authority is properly limited to claims by non-parties who are, at a minimum, PRPs with respect to the site at issue. CERCLA establishes a complex statutory framework designed to ensure, *inter alia*, that polluters, not taxpayers or innocent adjoining property landowners, pay for their pollution; that settlements are encouraged through specified contribution protection; and that PRPs, depending on their procedural circumstances, can achieve an equitable apportionment of costs through contribution actions under § 113(f) or cost recovery actions under § 107(a). *See United States v. Atlantic Research Corp.*, 551 U.S. 128, 138-39 (2007); *Kotrous*, 523 F.3d at 930-31. This framework, however, is necessarily based on the common-sense premise that the litigation is limited to the site placed at issue by the complaint and the persons identified as PRPs with respect to that site. CERCLA's policy of encouraging settlements by authorizing contribution protection to settling parties should not be construed in a manner that ambushes persons, like Intervenors, who had no connection

with, and no responsibility for, the pollution on the site at issue in the settlement, here Site A.

In any event, permitting Intervenors' Site B contribution claims to proceed will not undermine CERCLA's policy favoring settlement. CERCLA seeks to "encourage" settlement by penalizing identified non-settling PRPs with a bar on contribution claims, and the corresponding risk of having to pay a disproportionate share of response costs. This policy is not advanced by applying the contribution bar to Intervenors. They were not PRPs in the Site A litigation and could not have been settling parties in that action. In these circumstances, application of a contribution bar would be irrational and punitive.

Moreover, while PRPs may be hesitant to settle if non-settling PRPs (whether or not parties) are allowed to pursue post-settlement contribution claims against them, they are not likely to be influenced by the risk of being sued by a *non-*PRP, since instances in which non-PRPs are implicated by a settlement are extremely rare. In this case it is evident that Site B contamination, and the cost of cleanup at that site, were not matters expressly contemplated by the parties in entering into the 2001 Settlement.

The cases upon which Sherwin-Williams relies for its contention that § 113(f)(1) impliedly bars Intervenors' contribution claims do not support its arguments. In *United States v. Mallinckrodt, Inc.*, 2006 WL 3331220 (E.D. Mo. 2006), the court approved a private party settlement agreement barring contribution claims against the settling defendants "by any Person (whether or not a Party to the lawsuit) in relation to the Site." *Id.* at *1, n.2. Thus, while recognizing that a district court may have authority to approve a contribution bar in a private party case based on CERCLA's policy of encouraging settlement and § 113(f)(1)'s grant of authority to allocate cleanup costs, the decision does not address whether CER-CLA authorizes settlements barring claims that are *not* related

to the site which was the subject of the settlement agreement. Likewise, in *Barton Solvents, Inc. v. Southwest Petro-Chem, Inc.*, 834 F. Supp. 342 (D. Kan. 1993), the court approved a private party settlement barring contribution claims of non-settlers, but did not face the issue presented here of precluding claims of non-PRPs. *Id.* at 345-47. In reaching its decision, the *Barton Solvents* court adopted the same reasoning employed in *Mallinckrodt*. *Id*.

Finally, we note that Intervenors do not argue that courts can never find a CERCLA contribution bar in a private-party settlement agreement given that the statute expressly provides for a contribution bar only as to court-approved settlements with the United States or a State. Thus, *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177 (9th Cir. 2000), which Sherwin-Williams cites to refute this proposition, has no bearing on the analysis here. We also note, however, that the overwhelming majority of courts that have imposed or enforced a CERCLA contribution bar in a private-party settlement have done so only where the persons subject to the bar were either parties to the action, PRPs who were involved in or aware of settlement discussions, or non-parties who otherwise had at least constructive notice that their contribution claims stood to be extinguished. *See Boeing*, 207 F.3d at 1191-92 (contribution claims among existing parties); *City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 93-99 (1st Cir. 2008) ("nonsettling third and fourth parties" that were "active" in case after settlement discussions began); *United States v. Alexander*, 771 F. Supp. 830, 840-41 (S.D. Tex. 1991), *vacated in part on other grounds*, 981 F2d 250 (5th Cir. 1993) (contribution claims of a nonsettling party already in the litigation); *Lyncott Corp. v. Chemical Waste Management, Inc.*, 690 F. Supp. 1409, 1418-19 (E.D. Pa. 1988) (contribution bar addressed "nonsettlers" and there were no due process concerns because all affected parties were apparently before the court); *Barton Solvents,* 834 F. Supp. at 345-47 (contribution bar only purported to bar parties); *Foamseal, Inc. v. Dow Chem. Co.*, 991 F. Supp. 883, 885 (E.D. Mich. 1998) (nonset-

tling parties were already before the district court); *United States v. Pretty Products, Inc.*, 780 F. Supp. 1488, 1494-97 (S.D. Ohio 1991) (non-settling party withdrew from settlement discussions at its own risk and with knowledge that contribution claims against settling parties would be barred under § 113(f)(2)); *cf. Gurley v. City of West Memphis*, 489 F. Supp. 2d 876, 878-80 (E.D. Ark. 2007) (settlement with some PRPs expressly giving city protection from contribution "equivalent to the protection provided by CERCLA Section 113(f)(2)," did not bar contribution claims of PRP who was not a party to court proceedings that yielded the settlement).

**[7]** As we have noted, it is undisputed that Intervenors were not PRPs as to Site A, and they had neither actual nor constructive notice of the Site A litigation or the 2001 Settlement. In these circumstances, we reject Sherwin-Williams's claim that § 113(f)(1) should be construed to provide it with protection against the cross-claims for contribution and equitable indemnity asserted in the State Court Action.

**2.**

The district court, Emeryville, and Intervenors have cited copious, dispositive authority from the California courts refuting Sherwin-Williams's claim that the "good faith settlement" determination in this case under sections 877 and 877.6 of the California Code of Civil Procedure erected a bar to the cross-claims asserted in the State Court Action. Nonetheless, Sherwin-Williams persists in arguing that, notwithstanding its failure to give Intervenors any form of notice of the 2001 Settlement, those provisions bar Intervenors' claims for contribution and/or equitable indemnity.

The California "good faith settlement" statutes provide that when a settlement is judicially determined to have been made in good faith, it will "bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or par-

tial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Code Civ. P. § 877.6(c). The party applying for a "good faith settlement" determination is expressly required to give notice of its application only to other parties and the court. *Id.*, § 877.6(a).

**[8]** As the California Courts of Appeal have construed section 877.6, however, only those non-parties with constitutionally sufficient prior notice will be bound by a "good faith settlement" determination:

> "Fundamental constitutional principles of due process compel us to conclude that an unnamed joint tortfeasor whose potential liability is known, or reasonably should be known, to the settling parties but who is given no opportunity to be heard . . . is not bound by a good faith determination; he has the right to challenge that finding once he has been brought into the litigation."

*Singer Co. v. Superior Court*, 179 Cal. App. 3d 875, 890-91 (1986); *see also Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1273 (2006) ("A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given notice and an opportunity to be heard.").

**[9]** Sherwin-Williams's attempt to distinguish *Singer*'s notice requirement as applying only where the joint tortfeasors seeking to avoid a contribution bar were "known, or reasonably should [have been] known" to them, is unavailing. It is implausible for Sherwin-Williams to suggest that potential impacts on adjoining properties were neither known nor reasonably should have been known to Sherwin-Williams when it was seeking to resolve its liability for contamination caused by its operations at Site A in February 2001. The fact that Sherwin-Williams did not notify any Site B neighbors at that

time is proof it had no belief or expectation that it was resolving its potential Site B liability through the 2001 Settlement as to Site A. In sum, the district court did not err in finding that the "good faith settlement" determination as to the 2001 Settlement is not a bar to the contribution claims asserted in the State Court Action.[11]

## C.

As to its request for attorney's fees against Emeryville, Sherwin-Williams relies upon California Civil Code Section 1717(a) and *Hsu v. Abbara*, 9 Cal. 4th 863 (1995), to argue that it was entitled to attorney's fees as a matter of law. We disagree.

Where opposing litigants can legitimately claim some success in an action on a contract, a court's decision that there was no "prevailing party on the contract" is subject to review under the abuse of discretion standard of review. *See* Cal. Civ. Code § 1717(b)(1); *Hsu*, 9 Cal. 4th at 875-76; *see also Berkla v. Corel Corp.,* 302 F.3d 909, 917 (9th Cir. 2002).

California Civil Code section 1717(a) states:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be

---

[11]Because we conclude that none of the statutory provisions referenced in the 2001 Settlement bars the cross-claims for contribution against Sherwin-Williams in the State Court Action, we need not and do not decide whether recognition of a contribution bar in this case against Intervenors—who were not PRPs, and were neither named as parties to nor given any form of notice of the Site A litigation or the 2001 Settlement —would violate their due process rights.

> entitled to reasonable attorney's fees in addition to other costs.

Section 1717 goes on, however, to define the "prevailing party on the contract" as "the party who recovered a greater relief in the action on the contract," and further provides that a trial court "may also determine that there is no party prevailing on the contract for purposes of this section." Cal. Civ. Code § 1717(b)(1).

**[10]** In *Hsu*, the California Supreme Court traced the outer limits of the trial court's discretion to deny fees pursuant to section 1717(b)(1), concluding that "[w]hen a defendant obtains a simple, unqualified victory by defeating the only contract claim in the action, section 1717 entitles the successful defendant to recover reasonable attorney fees incurred in defense of that claim if the contract contained a provision for attorney fees." *Hsu*, 9 Cal. 4th at 877. Conversely, however, "when the ostensibly prevailing party receives only a part of the relief sought," the result is "mixed," and the trial court has "discretion to find no prevailing party." *Id.* at 875-76 (internal quotation marks omitted). To determine whether the party seeking fees has obtained an unqualified win, as opposed to a "mixed result," the trial court must examine the parties' "litigation objectives as disclosed by the pleadings, trial brief, opening statement and similar sources," and "the extent to which each party has succeeded and failed to succeed in its contentions." *Id.* at 876 (internal quotation marks omitted).

**[11]** As relevant to this issue, Sherwin-Williams's objectives in bringing this action were to obtain an order (1) confirming that the 2001 Settlement released all of the claims Emeryville asserted against it in the State Court Action, and (2) providing protection against any claims for contribution in the State Court Action. Resolution of the motion thus required interpretation of two provisions of the settlement agreement: the release and the contribution bar. As the district court found, Sherwin-Williams prevailed, in part, in its objectives

as to the former—to the extent Emeryville was seeking to recover clean-up costs at Site B for contaminants emanating from Site A—and failed as to the latter.

Despite this "mixed" result, Sherwin-Williams maintains that it obtained a "simple, unqualified win" by prevailing *against Emeryville* on the "only contract claim" in the case—namely, that related to the release provision. It maintains that its failure to prevail on the "separate claim" for contribution protection was not "on the contract" and did not render the results mixed. We disagree.

"An action is 'on the contract' when it is brought to enforce the provisions of the contract." *MBNA America Bank, N.A. v. Gorman*, 147 Cal. App. 4th Supp. 1, 7 (2006). The contribution bar was no less a provision of the contract than was the release provision. Indeed, Sherwin-Williams spends six pages of its opening brief arguing—ultimately fruitlessly—that the district court's error in rejecting its contribution bar arguments flowed from the court's flawed application of principles of contract interpretation. In a similar action involving construction and enforcement of a contract, the California Court of Appeal deemed an argument akin to Sherwin-Williams's "patently absurd." *City and Cty. of San Francisco v. Union Pac. R.R. Co.*, 50 Cal. App. 4th 987, 1000 (1996).

**[12]** Viewed in isolation, Sherwin-Williams substantially prevailed against Emeryville with respect to the release provision in the 2001 Settlement. Nonetheless, an important second issue concerned the *contribution* bar in which Emeryville had a substantial indirect stake, as any recovery against other defendants in the Site B action can now be passed on to Sherwin-Williams via contribution, all to the indirect benefit of Emeryville. This was a "mixed" result, and the district court did not abuse its discretion by denying Sherwin-Williams's fee application based on a finding that there was no "prevailing party" in this action. *See Hsu*, 9 Cal. 4th at 875-76.

### III.    Conclusion

For all the foregoing reasons, the district court's Amended Order of November 25, 2008, is AFFIRMED.