**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TODD LEWIS ASHKER; DANNY
TROXELL; GEORGE RUIZ; JEFFREY
ANTHONY FRANKLIN; GEORGE
FRANCO; GABRIEL RALPH REYES;
RICHARD K. JOHNSON; PAUL A.
REDD, JR.; LUIS ESQUIVEL; RONNIE
N. DEWBERRY,
            *Plaintiffs-Appellees*,

v.

GAVIN NEWSOM,\* Governor of the
State of California; MATTHEW CATE;
ANTHONY CHAUS, Chief, Office of
Correctional Safety, CDCR; GREG
LEWIS, Warden,
            *Defendants-Appellants.*

No. 18-16427

D.C. No.
4:09-cv-05796-
CW

OPINION

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted May 12, 2020
San Francisco, California

---

\* Gavin Newsom is substituted for his predecessor, Edmund G.
Brown, Jr., as Governor of the State of California. Fed. R. App.
P. 43(c)(2).

Filed August 3, 2020

Before:  J. Clifford Wallace and Ryan D. Nelson, Circuit
Judges, and James S. Gwin,[**] District Judge.

Opinion by Judge Gwin

## SUMMARY[***]

### Prisoner Civil Rights

The panel reversed the district court's ruling that the
California Department of Corrections and Rehabilitation
violated a settlement agreement, vacated the district court's
remedial orders, and remanded for further proceedings in a
prison conditions civil rights class action.

Prior to the settlement agreement, California Department
of Corrections and Rehabilitation ("California") housed the
Plaintiff Prisoners in solitary confinement based only upon
their gang affiliation.  In this action, the Prisoners alleged
that California breached the settlement agreement when it
transferred some prisoners from Security Housing (a type of
solitary confinement) to the General Population but did not
give those prisoners increased out-of-cell time.  The
Prisoners also alleged that California breached the

[**] The Honorable James S. Gwin, United States District Judge for
the Northern District of Ohio, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

settlement agreement when it limited another inmate group's direct physical contact during yard time.

The panel held that California did not violate the settlement agreement. The panel determined that Paragraph 25 of the agreement only required that California transfer inmates out of Security Housing to a different facility. Paragraph 25 did not limit California's discretion regarding out-of-cell time for the inmates removed from Security Housing to General Population.

The panel rejected the Prisoners' assertion that Paragraph 28 of the settlement agreement required California to provide Restricted Custody inmates who, for their own safety, could not be safely housed in the general population, with small group yard-time and other group activities. The panel held that Paragraph 28 did not require California to do more than it already had for inmates in Restricted Custody. But even if it did, the breach would not be actionable because California had substantially complied with Paragraph 28's requirements.

---

## COUNSEL

Jeffrey T. Fisher (argued), Deputy Attorney General; Jay C. Russell, Adriano Hrvatin, and Neah Huynh, Supervising Deputy Attorneys General; Monica Anderson, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, San Francisco, California; for Defendants-Appellants.

Samuel Miller (argued), Jules Lobel, and Rachel Meeropol, Center for Constitutional Rights, New York, New York; Carmen E. Bremer, Bremer Law Group PLLC, Seattle,

Washington; Anne Cappella, Weil Gotshal & Manges LLP, Redwood Shores, California; Charles F.A. Carbone, Law Offices of Charles Carbone, San Francisco, California; Anne Butterfield Weills, Siegel Yee & Brunner, Oakland, California; Matthew Strugar, Law Office of Matthew Strugar, Los Angeles, California; for Plaintiffs-Appellees.

David C. Fathi, Amy Fettig, and Jennifer Wedekind, ACLU National Prison Project, Washington, D.C.; Danielle C. Jefferis and Nicole B. Godfrey, Student Law Office—Civil Rights Clinic, University of Denver College of Law, Denver, Colorado; Daniel M. Greenfield, Roderick & Solange Macarthur Justice Center, Chicago, Illinois; David Loy, ACLU Foundation of San Diego & Imperial Counties, San Diego, California; for Amici Curiae Former Corrections Officials.

## OPINION

GWIN, District Judge:

This appeal stems from a prison conditions civil rights class action settlement. Earlier, the Defendant California Department of Corrections and Rehabilitation ("California") housed the Plaintiff Prisoners (the "Prisoners") in solitary confinement based only upon their gang affiliation. California settled the case, agreeing to several reforms as memorialized in a settlement agreement ("Settlement Agreement").

The Prisoners argue that California did not comply with the Settlement Agreement. The Settlement Agreement required California to move class members from solitary confinement to a General Population level IV facility.

California did this. Even so, the inmates say there was an implied requirement that the prison give these inmates greater out-of-cell time.

The Settlement Agreement also made special provisions for inmates leaving solitary confinement who would not be safe in the general population. The Settlement Agreement allowed these inmates to be placed in small groups housed in a separate unit that would be given privileges commensurate with General Population level IV privileges. For some of these inmates, California was unable to find a group that would accept the inmates without conflict. These inmates received yard-time, but their yard-time was in fenced yards that are limited to one inmate per unit. The Prisoners say this practice also violated the Settlement Agreement.

The Prisoners moved to enforce the Settlement Agreement. They contended that California breached the Settlement Agreement when it transferred some prisoners from Security Housing to General Population but did not give those prisoners increased out-of-cell time. The Prisoners also said that California broke the Settlement Agreement when it limited another inmate group's direct physical contact during yard time.

The district court granted the Prisoners' motions to enforce. California appealed. We hold that California did not violate the Settlement Agreement and reverse.

## I.

## A.

For many years, California housed gang members and associates in Security Housing Units ("Security Housing"),

a type of solitary confinement.  In many cases, California based this Security Housing placement solely on the prisoner's gang affiliation.[1]

In December 2009, Plaintiff Prisoners sued in a prisoner civil rights action challenging this policy and the conditions in the Pelican Bay Security Housing Unit.  In September 2012, the Prisoners filed a second amended complaint raising class claims on behalf of other inmates at Pelican Bay.

In August 2015, the parties settled the case.  While the Settlement Agreement included many reforms, only two substantive sections of the Settlement Agreement are relevant to this case.

First, in Paragraph 25, California agreed to review the cases of inmates in Security Housing and transfer these inmates from solitary confinement to "a General Population level IV 180-design facility."

Second, in Paragraph 28, the parties agreed to a new type of housing: Restricted Custody General Population ("Restricted Custody").  The parties intended Restricted Custody to house inmates who, for their own safety, could not be safely housed in the general population.

In the Settlement Agreement, California agreed to provide these Restricted Custody inmates "increased opportunities for positive social interaction . . . including . . . yard/out of cell time commensurate with Level IV [General

---

[1] *See Griffin v. Gomez*, 741 F.3d 10, 12 (9th Cir. 2014) (describing California's housing policy for gang-affiliated inmates).

Population] in small group yards, in groups as determined by the Institution Classification Committee."

The district court approved the Settlement Agreement in January 2016.

**B.**

After the Settlement Agreement, California began implementing the Settlement Agreement's policy reforms. California moved most Security Housing gang members to general population.

For threatened inmates, California created the Restricted Custody housing units and instituted new security policies for that unit. When an inmate arrives at Restricted Custody, California places them on "walk-alone" status to observe their interaction with other Restricted Custody inmates. After staff observation and evaluation, staff reach out to groups within Restricted Custody to ask if those groups would accept the new inmate and would commit to avoid trouble with the new inmate. If both the inmate and the group agree to avoid problems, the prison places the inmate with the compatible group. But some inmates remain on walk-alone status indefinitely because no compatible group has agreed to accept the inmate.

Inmates on walk-alone status have more restricted opportunities for physical contact with other inmates when on yard time. Walk-alone status inmates go to fenced individual yards that are twenty-feet long by ten-feet wide. Other yards adjoin the walk-alone yards and walk-alone inmates can interact with other walk-alone inmates or groups through the fences.

Walk-alone inmates also have more restricted access to leisure-time activities and social interaction. While in the day room, walk-alone status inmates can speak with inmates in front of their cells but cannot be released into the group. However, walk-alone inmates do have regular access to phones, visitors, and educational programming.

## C.

In October 2017, the Prisoners filed two motions to enforce the Settlement Agreement.

In the first motion, the Prisoners claimed California violated Paragraph 25 of the Settlement Agreement. The Prisoners argued that some of the individuals transferred from Security Housing to the General Population were "spending the same or *more* time isolated in their cells." The Prisoners contended that the Settlement Agreement required transfer to "General Population" conditions and claimed the Settlement Agreement required Defendant "to . . . provide sufficient yard, day room, programming, jobs, and other means of social interaction and environmental stimulation to meet the obligation of housing these class members in actual general population conditions."

In the second motion, the Prisoners argued that California violated Paragraph 28 of the Settlement Agreement. The Prisoners reasoned that prisoners on walk-alone status do not receive access to increased opportunities for positive social interaction even compared to the former Security Housing. The Prisoners argued that the walk-alone conditions differ from those suggested in the Settlement Agreement and that California breached the settlement agreement.

The district court referred both motions to a magistrate judge under 28 U.S.C. § 636(b)(1)(B).  In March 2018, the magistrate judge recommended that both motions be denied.  About two weeks later, the Prisoners moved for the district judge to review the motions' recommended denials.

In July 2018, the district court rejected the magistrate judge's recommendations and granted Plaintiffs' two motions to enforce the Agreement.  California then timely appealed both orders.

In December 2018, the district court adopted remedial plans, but stayed enforcement of the plans pending this appeal.  California then amended its appeal to include the district court's orders adopting the remedial plans.  On appeal, California argues that it breached neither Paragraph 25 nor 28.[2]

## II.

Under California law,[3] "[a] settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts."[4]

---

[2] California also argues the district court committed error when adopting the remedial plans.  But because we hold that California did not breach the Settlement Agreement and vacate the remedial orders, California's arguments are now moot.

[3] The Settlement Agreement includes a choice-of-law clause requiring application of California law.

[4] *Monster Energy Co. v. Schechter*, 444 P.3d 97, 102 (Cal. 2019) (internal quotation marks and citation omitted).

We review the interpretation of a settlement contract de novo.**5** "We defer to any factual findings made by the district court in interpreting the settlement agreement unless they are clearly erroneous."**6**

"We review the district court's enforcement of a settlement agreement for abuse of discretion."**7** Under this standard, "we will reverse only if the district court made an error of law, or reached a result that was illogical, implausible, or without support in the record."**8**

## III.

## A.

The Prisoners argue that California violated Paragraph 25 of the Settlement Agreement by placing some class members into housing where they receive less out-of-cell time than they received in Security Housing.

California does not contest the district court's finding that some inmates receive limited out-of-cell time. Instead, California argues that Paragraph 25 requires inmate transfer from Security Housing to General Population but does not control General Population conditions. We agree.

---

**5** *Parsons v. Ryan*, 912 F.3d 486, 495 (9th Cir. 2018) (citation omitted).

**6** *Id*. (quoting *City of Emeryville v. Robinson*, 621 F.3d 1251, 1261 (9th Cir. 2010)).

**7** *Id*. (citing *Wilcox v. Arpaio*, 753 F.3d 872, 875 (9th Cir. 2014)).

**8** *Id*. (citing *United States v. Hinkson*, 585 F.3d 1247, 1261–63 (9th Cir. 2009)).

"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties."**[9]**  "[I]n the absence of fraud or mistake, the intention of the parties as expressed in the agreement is controlling, and courts are not empowered under the guise of construction or explanation to depart from the plain meaning of the writing and insert a term or limitation not found therein."**[10]**

The plain meaning of the Settlement Agreement controls here.  Paragraph 25 provides that certain eligible inmates "shall be released from [Security Housing] and transferred to a General Population level IV 180-design facility, or other general population institution consistent with his case factors."

Paragraph 25 only requires that California transfer inmates out of Security Housing to a different facility.  Paragraph 25 does not limit California's discretion regarding out-of-cell time for the inmates removed from Security Housing to General Population.

With this action, the Prisoners principally challenged their continued solitary confinement in Security Housing based only on gang affiliation.  Having negotiated their solitary confinement release, the Prisoners do not point to any settlement language requiring any specific out-of-cell time.  California made no agreement regarding the out-of-cell conditions for inmates leaving Security Housing for General Population under the settlement.

---

**[9]** *State of California v. Cont'l Ins. Co.*, 281 P.3d 1000, 1004 (Cal. 2012) (internal quotation marks and citations omitted).

**[10]** *Tanner v. Title Ins. & Trust Co.*, 129 P.2d 383, 389 (Cal. 1942) (citation omitted).

Elsewhere in the Settlement Agreement, the parties showed that they knew how to negotiate conditions. Paragraph 29 requires 20 hours of out-of-cell time for inmates remaining in Security Housing after the Settlement Agreement. The parties failed to include any similar Paragraph 25 out-of-cell requirement for inmates transferred from Security Housing to the general population.

We therefore conclude that California has complied with Paragraph 25's requirements.

## B.

### 1.

The Prisoners argue that Paragraph 28 of the Settlement Agreement requires California to provide Restricted Custody inmates on walk-alone status with small group yard-time and other group activities.

Paragraph 28 states:

> Programming for those inmates transferred to or retained in the Restricted Custody Group will be designed to provide increased opportunities for positive social interaction with other prisoners and staff, including but not limited to: Alternative Education Program and/or small group education opportunities; yard/out of cell time commensurate with Level IV GP in small group yards, in groups as determined by the Institution Classification Committee; . . . and leisure time activity groups.

Two aspects of Paragraph 28 undercut the Prisoners' argument. First, the paragraph strikes an aspirational tone by stating that the programming "will be designed to provide increased opportunities for positive social interaction." This is not, as the Prisoners contend, a strict requirement that there will be more social interaction, but instead a programming goal.

Second, Paragraph 28 refers to "small group yards" but does not say how many, or if any, other prisoners need be in the same group yard. Further, the paragraph gives the Institutional Classification Committee power to determine the groups. The plain meaning of this clause suggests the parties intended to give the Institutional Classification Committee discretion to limit the number of inmates in a small group yard. The Prisoners cannot now complain about how the Institutional Classification Committee has exercised that discretion.

## 2.

Paragraph 28 does not require California to do more than it already has for inmates in Restricted Custody. But even if it did, the breach would not be actionable because California has substantially complied with Paragraph 28's requirements.

As relevant here, the Prisoners argue that California failed to "substantially compl[y]" and that the breach is therefore actionable under Paragraph 53 of the Settlement Agreement. We disagree.

A party's substantial compliance with a contract "depends primarily on whether [that party] has realized the

contemplated benefits from [the contract]."**11**    "[I]n California a party is deemed to have substantially complied with an obligation only where any deviation is 'unintentional and so minor or trivial as not substantially to defeat the object which the parties intend to accomplish.'"**12**

Most inmates in Restricted Custody have access to the activities enumerated in Paragraph 28.  They can also have meetings with teachers (through cell doors), job assignments, phone calls, and contact and no-contact visits. And although those inmates on walk-alone status may have limited physical contact with other inmates while in group activities or in the yard, they are still able to interact.  Given the institution's safety concerns, these limitations are only minor deviations from Paragraph 28's requirements.

## IV.

For these reasons, we reverse the district court's ruling that California violated the Settlement Agreement, vacate the district court's remedial orders, and remand for further proceedings consistent with this opinion.

**REVERSED, VACATED, AND REMANDED.  THE PARTIES SHALL BEAR THEIR OWN COSTS.**

---

**11** *Cline v. Yamaga*, 158 Cal. Rptr. 598, 603 (Ct. App. 1979).

**12** *Rouser v. White*, 825 F.3d 1076, 1082 (9th Cir. 2016) (quoting *Wells Benz, Inc. v. United States*, 333 F.2d 89, 92 (9th Cir. 1964)).  "The determination[] of whether there was a breach of contract . . . [is a] question[] of fact," *Ash v. N. Am. Title Co.*, 168 Cal. Rptr. 3d 499, 506 (Ct. App. 2014), which we review for clear error.  *Jeff D. v. Otter*, 643 F.3d 278, 283 (9th Cir. 2011).