FILED

DEC 12 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. WW-12-1534-TaKuD |
| | ) | |
| LORETTA J. BROWN, | ) | Bk. No. 10-22724-TWD |
| | ) | |
| Debtor. | ) | Adv. No. 11-01056-TWD |
| _____ | ) | |
| | ) | |
| LORETTA J. BROWN; MICHAEL B. | ) | |
| McCARTY, Chapter 7 Trustee, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | MEMORANDUM* |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| successor by merger to BAC | ) | |
| HOME LOANS SERVICING, LP; | ) | |
| RECONTRUST COMPANY, N.A.; | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on October 17, 2013
at Seattle, Washington

Filed - December 12, 2013

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Timothy W. Dore, Bankruptcy Judge, Presiding
_____

Appearances:    Richard Llewelyn Jones, Esq. for Appellants
                Loretta J. Brown and Michael B. McCarty, Chapter 7
                Trustee; Steven Andrew Ellis, Esq. of Goodwin
                Procter LLP for Appellees Bank of America, N.A.,
                successor by merger to BAC Home Loans Servicing,
                LP, ReconTrust Company, N.A., and Mortgage
                Electronic Registration Systems, Inc.

_____

     *   This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

Before: TAYLOR, KURTZ, and DUNN, Bankruptcy Judges.

## I.   INTRODUCTION

Debtor Loretta Brown ("Debtor") and her chapter 7[1] trustee Michael McCarty ("McCarty") appeal from multiple adverse rulings that disposed of the adversary proceeding they filed against Debtor's mortgage lender, its servicer and agents, and MERS.  The bankruptcy court entered a final order that specifically encompassed two prior dismissal orders, denial of a motion to reconsider one of the dismissal orders, and its grant of summary judgment – resolving all claims in favor of all of the defendants.

After evaluating all issues properly reviewable in this appeal,[2] we AFFIRM.

## II.   PROCEDURAL AND FACTUAL BACKGROUND[3]

**A.   Pre-bankruptcy events**

In 2007, Debtor borrowed money from and executed a

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] In addition, the first of the two dismissal orders is the subject of a Civil Rule 60(b) motion filed by Appellants on March 8, 2013, after Appellants filed the Notice of Appeal as to the Final Judgment that initiated this appeal.  The bankruptcy court denied the motion by order entered on March 29, 2013, based on lack of jurisdiction, and Appellants appealed, thus initiating BAP No. 13-1170 (the "Related Appeal").  We address the Related Appeal in a separate Memorandum.

[3] We exercised our discretion to review documents on the bankruptcy court's electronic docket to assist us in ascertaining the relevant procedural history. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 958 (9th Cir. 1989).

promissory note ("Note") and a deed of trust ("Trust Deed") in favor of Countrywide Home Loans, Inc. ("Countrywide"), as lender. The Trust Deed encumbered Debtor's real property in Bellevue, Washington (the "Property") and identified LandSafe Title of Washington ("LandSafe") as trustee and MERS as beneficiary. Later in 2007, the Federal National Mortgage Association ("FannieMae") acquired an ownership interest in the Note.

In documents dated October 14, 2010: MERS purported to assign the Trust Deed and Note to BAC Home Loans Servicing, LP ("BAC"), fka Countrywide Home Loans Servicing (the "MERS Assignment"); and BAC appointed ReconTrust Company, N.A. ("ReconTrust") as successor trustee under the Trust Deed (the "Successor Trustee Appointment"). Promptly thereafter, Debtor received a Notice of Default ("Notice of Default") executed on behalf of ReconTrust as the duly authorized agent for BAC. The Notice of Default identified BAC as "Owner of Note" and "Servicer" and provided notice, among other things, that Debtor must submit a cure payment of $11,677.09 to avoid foreclosure.

**B.    Initial bankruptcy events**

On October 22, 2010, Debtor filed a voluntary bankruptcy petition under chapter 7 and scheduled "BAC Home Loans" as a creditor with debt secured by first and second deeds of trust against the Property. Within a month of Debtor's petition, BAC sought relief from the automatic stay to allow it to foreclose. Debtor did not oppose the motion. Instead, Debtor filed a complaint initiating adversary proceeding no. 11-01056 (the "Adversary Proceeding").

Debtor filed the Adversary Proceeding against Countrywide,

LandSafe, ReconTrust, BAC, and MERS and sought a temporary restraining order and permanent injunction, quiet title, and damages under various legal theories, including wrongful foreclosure, the Consumer Protection Act ("CPA"), the Fair Debt Collection Practices Act ("FDCPA"), and malicious prosecution. Before any responsive pleadings were filed, Debtor and McCarty together filed an amended complaint.

**C.    First Amended Complaint and Motion to Dismiss**

In the amended complaint ("FAC"), McCarty joined as a party plaintiff.  Otherwise, the FAC substantially mirrors the initially filed complaint.[4]  In general, Debtor and McCarty ("Appellants") alleged that BAC and ReconTrust violated the CPA by promulgating, recording, and relying on documents they should have known were false, in particular: the MERS Assignment, the Successor Trustee Appointment, and the Notice of Default. Appellants also alleged that ReconTrust's issuance and use of the Notice of Default violated the FDCPA and that ReconTrust's attempts to dispossess Debtor of her property constituted malicious prosecution.

As to the claim for wrongful foreclosure ("Wrongful Foreclosure Claim"), Appellants alleged that the defendants[5]

---

[4]    As in the initially filed complaint, the caption of the FAC lists not only the claims for relief contained therein, but also breach of contract, libel/defamation of title, and violation of the Real Estate Settlement Procedures Act, U.S.C. § 2601, claims never pled or even discussed in the FAC.

[5]    Generally, both the FAC and the subsequently filed version of the complaint suffer from lumping of "defendants," inexact references to other parts of the pleadings that lead nowhere (especially as to alleged "injury," as discussed later

(continued...)

- 4 -

violated the Washington Deed of Trust Act[6] ("Trust Deed Act") when they designated MERS as a beneficiary in the Trust Deed and MERS subsequently executed the MERS Assignment. Appellants contended that BAC's authority to execute the Successor Trustee Appointment and ReconTrust's authority to execute the Notice of Default derived solely from the invalid MERS Assignment, invalidating both documents. They alleged that these transactions constituted a "sham" and, therefore, invalid transactions under the Trust Deed Act.[7] Appellants similarly based their action to quiet title ("Quiet Title Action") on their argument that the defendants' allegedly invalid transactions irreparably severed the Note from the Trust Deed.

Defendants Countrywide, ReconTrust, BAC, and MERS brought a motion to dismiss the FAC pursuant to Civil Rule 12(b)(6) ("First Dismissal Motion"). Simply stated, the movants argued that: (a) Appellants could not state a claim for wrongful foreclosure because Appellants did not and could not allege that a foreclosure had been noticed or conducted; (b) the FDCPA did not apply to them, and they were not "collecting a debt" for purposes of the FDCPA; (c) Appellants could not satisfy the required elements to establish a CPA claim; (d) initiation of a non-judicial foreclosure is not an "action for damages," and,

[5](...continued) herein), and conclusory allegations – all of which tend to blur together the elements of the various claims asserted therein.

[6] Washington Revised Code § 61.24 et seq.

[7] Appellants also contended that the MERS Assignment and the Successor Trustee Appointment were invalid due to "robo-signing" and improper notarization.

- 5 -

thus, no malicious prosecution claim could be pled; and (e) the Quiet Title Action failed, as ownership was not in question and Debtor did not satisfy her loan obligation.

The bankruptcy court granted the First Dismissal Motion by order entered on January 10, 2012 (the "First Dismissal Order").[8] The bankruptcy court dismissed the Wrongful Foreclosure Claim "with prejudice to the extent that it seeks monetary damages or a permanent injunction against the Defendants." Adv. dkt. #42 at 2:3-14. It dismissed all other claims without prejudice.[9]

Appellants sought reconsideration of the First Dismissal Order under Civil Rule 59, requesting that they be allowed to amend the Wrongful Foreclosure Claim. The bankruptcy court denied the requested relief. In its order, the bankruptcy court stated that the "Plaintiffs already have the relief they seek." Adv. dkt. #47 at 2:18. The dismissal with prejudice only applied to the extent Appellants sought monetary damages or a permanent injunction, as the bankruptcy court held that neither form of relief was allowed under the relevant statutes, RCW 61.24.130 and RCW 7.40.020; however, Appellants were free to seek a temporary injunction and could amend their complaint accordingly.

---

[8] The bankruptcy court stated its reasons for granting the First Dismissal Motion orally on the record on December 22, 2011 (erroneously cited in the Hearing Transcript as December 14, 2011). During its oral ruling, the bankruptcy court stated that the Appellants withdrew their claim for malicious prosecution, requiring the bankruptcy court to rule only as to the remaining four claims for relief.

[9] In documents filed both in the Adversary Proceeding and this appeal, Appellants frequently use the term "cause of action." As both the Rules and Civil Rules discuss "claims" and not "causes of action," we do so as well herein.

**D.   Second Amended Complaint and Motion to Dismiss**

Appellants filed a second amended complaint ("SAC") naming only ReconTrust, BAC, and MERS as defendants.  The SAC contained three identified claims:  abuse of process/wrongful civil proceedings, violation of the FDCPA, and violation of the CPA; and sought an injunction and damages.  The factual allegations are substantially similar to those alleged in the FAC. Appellants again alleged that the MERS Assignment, the Successor Trustee Appointment, and the Notice of Default supported the asserted claims.  In addition, the Appellants alleged that in response to a request for information in December 2010,[10] BAC identified FannieMae as the "holder of the loan" and "current owner" of the Note and itself as the servicer of the loan. Appellants assert that these statements directly contradict the statement of ownership of the Note by BAC contained in the Notice of Default and, thus, support Appellants' allegations that neither MERS nor BAC were ever the legal holder or owner of the obligation.

ReconTrust, Bank of America, N.A., as successor by merger to BAC ("BofA"), and MERS jointly brought a motion to dismiss the SAC pursuant to Civil Rule 12(b)(6) ("Second Dismissal Motion"). The movants argued that Appellants again failed to adequately plead the identified claims and, in addition, that Appellants should be collaterally estopped from contending that BofA could

---

[10]  Notably, Appellants thus conceded in the SAC (filed in January 2012) that they had notice in December 2010 and prior to Debtor's initiation of the Adversary Proceeding in January 2011, of FannieMae's ownership of the Debtor's loan and BAC's role as servicer.

- 7 -

not initiate foreclosure proceedings, based on the order entered by the bankruptcy court on the uncontested relief from stay motion.

The bankruptcy court denied the Second Dismissal Motion in part, and granted it in part.[11] By order entered April 6, 2012 (the "Second Dismissal Order"), the bankruptcy court dismissed all claims in the SAC, with prejudice, except for the FDCPA claims against BofA and ReconTrust. The bankruptcy court also denied the Appellants' request for leave to further amend the complaint.

**E.    Summary Judgment Motion**

The Second Dismissal Order allowed the Appellants' FDCPA claims to go forward against BofA and ReconTrust. After close of discovery, BofA and ReconTrust ("SJ Movants") filed a joint motion for summary judgment ("SJ Motion").[12] The SJ Movants supported the SJ Motion with the declaration of Joe Peloso, a Mortgage Resolution Specialist employed by BofA. Peloso's Declaration authenticated: (a) a copy of the Note that included an endorsement in blank from Countrywide; (b) a copy of a

---

[11]   On April 6, 2012, the bankruptcy court held a hearing specifically to orally state its reasons for granting the Second Dismissal Motion. The hearing transcript erroneously shows March 9, 2012, as the date of the oral ruling, whereas, oral argument occurred on March 9, 2012 and the oral ruling was issued on April 6, 2012.

[12]   By order entered May 11, 2012, the bankruptcy court required that all discovery be completed by August 17, 2012. The SJ Movants filed the SJ Motion on the discovery cutoff date. Nonetheless, Appellants argued for a continuance of the hearing on the SJ Motion pursuant to Civil Rule 56(d) and lack of discovery. The bankruptcy court denied the unsupported request. Appellants do not appeal from the denial of their request for continuance, and the issue, thus, is waived.

certified Certificate of Filing by BAC dated April 21, 2009, changing the name of Countrywide Home Loans Servicing LP to BAC; (c) a copy of Announcement 08-12 dated May 23, 2008 on FannieMae letterhead, amending its Servicing Guidelines regarding "Note Holder Status for Legal Proceedings Conducted in the Servicer's Name"[13]; and (d) a copy of a letter dated June 24, 2011, from the Comptroller of the Currency addressed to BofA and titled "Conditional Approval #1003 July 2011," that documented the merger of BAC into BofA.

Peloso's Declaration provided evidence that from loan origination, ReconTrust, a wholly-owned subsidiary and agent of BofA (and its predecessors in interest), maintained custody of the endorsed-in-blank Note. Further, he testified that the investor in the loan, FannieMae, authorized BAC, and subsequently BofA, to enforce the Note on its behalf. Thus, the SJ Movants argued that they are not "debt collectors" within the meaning of the FDCPA, having obtained an interest in the loan long before it went into default. They also argued that they did not make false or misleading representations and employed no unfair practices (as required to support an FDCPA claim), as they were entitled to issue the Notice of Default based on Debtor's payment defaults, the power of sale in the Trust Deed, and their authority as servicer (and servicer's agent) and as holder of the Note.

In written response to the SJ Motion, Appellants objected to Peloso's Declaration on the grounds that Mr. Peloso was not

_____

[13] The SJ Movants also pointed out that the FannieMae Guidelines are available at "https://www.efanniemae.com/sf/guides/ssg/2008annlenlrt.jsp."

competent or qualified to testify and merely presented inadmissible hearsay. Substantively, Appellants argued that Appellants' claims were valid and all arose from the fact that MERS was not a beneficiary under the Trust Deed. Appellants cited the then recently issued opinion by the Washington State Supreme Court, Bain v. Metro. Mortg. Grp., Inc.[14] Appellants further argued that all actions of which Appellants complained proceeded from the invalid MERS Assignment and gave rise to "collateral claims" such as those arising under the FDCPA and the CPA. Finally, Appellants argued that the Bain opinion supported Appellants' contention that the initiation of a non-judicial foreclosure without the authority of the "true and lawful holder and owner" of the Note and Trust Deed violated the FDCPA. Adv. dkt. #72 at 12:19-21.

Appellants further argued that BofA was a debt collector under the FDCPA because it purchased a debt in default, relying on their contention that BofA acquired its interest on October 14, 2010 via the MERS Assignment and shortly before the Notice of Default issued. They argued that the SJ Movants failed to present any evidence that FannieMae ever declared a default or that FannieMae owned any interest in the Note, other than the unreliable testimony in Peloso's Declaration.

The evidence presented by Appellants in response to the SJ Motion consisted of the SAC and its attached documents, the Declaration of Adam Greenhalgh that Appellants filed in support

---

[14]   175 Wn.2d 83 (2012).

of their opposition to the First Dismissal Motion;[15] Appellants' counsel's declaration regarding his review of documents at Defendants' counsel's office described as the "collateral wallet"; and Debtor's verification of the SAC.

After oral argument and additional briefing, the bankruptcy court overruled the Appellants' objections to Peloso's Declaration, granted the SJ Motion, and entered its order (the "Final Judgment").

**F. Civil Rule 60(b) motion for relief from Second Dismissal Order**

On August 29, 2012, and after the SJ Motion was filed, Appellants filed a Motion for Relief from Judgement/Order of April 6, 2012 pursuant to Civil Rule 60(b) (the "Civil Rule 60(b) Motion"). Appellants brought the Civil Rule 60(b) Motion solely on the grounds that the Bain opinion rendered August 16, 2012 undercut the reasoning underlying the bankruptcy court's Second Dismissal Order and repudiated the case law argued in support of the Second Dismissal Motion. Appellants requested that the bankruptcy court permit them to further amend their complaint "to assert additional claims based upon the Bain decision." Adv. dkt. #68 at 7:6-8.

The bankruptcy court heard oral argument on the Civil Rule 60(b) Motion and later stated its ruling orally on the record

---

[15] The bankruptcy court appropriately did not review the Declaration of Adam Greenhalgh offered by Appellants in connection with its consideration of the First Dismissal Motion. See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 (9th Cir. 1989) (generally a court may not consider any material beyond the pleadings in its evaluation of a Civil Rule 12(b)(6) motion).

- 11 -

when it also ruled on the SJ Motion. The bankruptcy court denied the Civil Rule 60(b) Motion, as ordered in the Final Judgment.

Appellants filed their notice of appeal from the Final Judgment on October 18, 2012 along with a motion seeking an extension of the time for filing the notice of appeal. The bankruptcy court granted the extension of the deadline to October 18, 2012, by order entered December 31, 2012. Therefore, the notice of appeal is timely.

### III. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(O).

We have jurisdiction under 28 U.S.C. § 158(a) and (b) to hear appeals from final judgments, orders, and decrees; and with leave of the Panel, from interlocutory orders and decrees of bankruptcy judges. The burden of demonstrating jurisdiction lies with the party asserting it. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80 (1994). Here, Appellants merely state that we have appellate jurisdiction pursuant to 28 U.S.C. § 158.

Appellants explicitly appeal from the Final Judgment. The Final Judgment provides that "entry of this Order together with the prior dismissal orders [Docket Nos. 42 and 58] result in all causes of action in this adversary proceeding being resolved in favor of the Defendants." Adv. dkt. #79 at 2.

Docket No. 42 is the First Dismissal Order, by which the bankruptcy court dismissed Appellants' Wrongful Foreclosure Claim with prejudice "to the extent that it seeks monetary damages or a permanent injunction against the Defendants"; and dismissed all

- 12 -

remaining claims without prejudice. Adv. dkt. #42 at 2. As the First Dismissal Order dismissed most of the FAC without prejudice, the First Dismissal Order was an interlocutory order. See WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). When the bankruptcy court entered the Final Judgment, however, the First Dismissal Order became final and appealable. See Munoz v. Small Bus. Admin., 644 F.2d 1361, 1364 (9th Cir. 1981) ("an appeal from the final judgment draws in question all earlier non-final orders and all rulings which produced the judgment"). Arguably, two of Appellants' stated issues on appeal[16] implicate the First Dismissal Order, as does their argument that the bankruptcy court should not have dismissed the Quiet Title Action. "[T]he rule is well settled that a mistake in designating the judgment appealed from should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake." Id. at 1363. Here, we may infer Appellants' intent to appeal from the dismissal of the Wrongful Foreclosure Claim and the Quiet Title Action in the First Dismissal Order from their Statement of Issues and arguments presented on appeal, and Appellees were not misled by

---

[16] Appellants' stated Issue No. 1 claims the bankruptcy court erred by dismissing Appellants' claims for wrongful foreclosure and "irregularities in the proceedings," although Appellants inaccurately attribute the dismissal as accomplished by the Second Dismissal Order and the Final Judgment, rather than the First Dismissal Order. Their Issue No. 2 claims that the bankruptcy court erred by dismissing Appellants' "claims for injunctive relief" – again attributing the dismissal to the Second Dismissal Order and Final Judgment, rather than the First Dismissal Order. Both stated issues also confusingly refer to the bankruptcy court's denial of the Civil Rule 60(b) Motion, which was entered October 2, 2012.

the alleged mistake.  The Appellees fully briefed the dismissal of both claims.[17]  The propriety of the dismissal of these claims, therefore, is properly before this Panel.

Docket No. 58, referred to in the Final Judgment, is the Second Dismissal Order.  The Second Dismissal Order pertained to the Appellants' SAC and resulted in dismissal of two of the three claims therein – the Abuse of Process and CPA claims – against all Defendants and the FDCPA claims against MERS.  The bankruptcy court specifically did not dismiss the FDCPA claims alleged against BofA and ReconTrust.  Because the Second Dismissal Order did not dispose of all claims among all the parties, it, too, was an interlocutory order until entry of the Final Judgment, at which time it became final and appealable.  See Nascimento v. Dummer, 508 F.3d 905, 908 (9th Cir. 2007); and Munoz, 644 F.2d at 1364.  Appellants' stated Issue No. 5 implicates the Second Dismissal Order as Appellants claim the bankruptcy court erred by "dismissing Appellants' claims for violation of the Washington Consumer Protection Act" which were dismissed in the Second Dismissal Order.[18]  Appellants' Opening Brief at 1.  Therefore, we conclude that the propriety of the dismissal of the CPA claims

---

[17]  Appellees initially argue that Appellants waived appeal from the dismissal of the Wrongful Foreclosure Claim and the Quiet Title Action by failing to include such claims in the SAC. Appellees nonetheless addressed the merits of dismissal of both claims on appeal.

[18]  Appellants confusingly frame the issue, however, as error made in connection with the bankruptcy court's Final Judgment and ruling contained therein that denied relief from the Second Dismissal Order.

- 14 -

is also before this Panel in this appeal.[19]

## IV. ISSUES

1. Whether the bankruptcy court erred when it granted summary judgment in favor of BofA and ReconTrust on the FDCPA claims.

2. Whether the bankruptcy court erred when it dismissed all other claims against BofA and ReconTrust.

3. Whether the bankruptcy court erred when it dismissed all claims against MERS.

4. Whether the bankruptcy court abused its discretion when it denied the Civil Rule 60(b) Motion.

## V. STANDARDS OF REVIEW

We review de novo the bankruptcy court's decision to grant summary judgment. Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009); Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007). Viewing the evidence in the light most favorable to the non-moving party (i.e., Appellants), we determine whether the bankruptcy court correctly found that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Jesinger v. Nev. Fed. Credit Union,

---

[19] Appellants include another issue in their Statement of Issues on Appeal, claiming that the bankruptcy court erred by dismissing Appellants' claim for breach of contract. We note that the caption page of the FAC included "Breach of Contract," however, Appellants failed to plead a claim for breach of contract in the FAC. Nor do Appellants present any argument on appeal with respect to breach of contract. Therefore, this issue has been waived. City of Emeryville v. Robinson, 621 F.3d 1251, 1261 (9th Cir. 2010) (appellate courts in this Circuit "will not review issues which are not argued specifically and distinctly in a party's opening brief.").

24 F.3d 1127, 1130 (9th Cir. 1994); Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch), 237 B.R. 160, 165 (9th Cir. BAP 1999).

We also review de novo the bankruptcy court's grant of a Civil Rule 12(b)(6) motion to dismiss. Movsesian v. Victoria Versicherung AG, 629 F.3d 901, 905 (9th Cir. 2010). When reviewing a Civil Rule 12(b)(6) dismissal, we generally limit our consideration to the complaint. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005). We view the complaint in the light most favorable to the plaintiff, accepting all well-pled factual allegations as true, as well as any reasonable inferences drawn from them. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1122 (9th Cir. 2008). We may affirm on any basis in the record. See Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC), 481 B.R. 34, 44 (9th Cir. BAP 2012).

We review the bankruptcy court's denial of the Civil Rule 60(b) Motion for abuse of discretion. Arrow Elecs., Inc. v. Justus (In re Kaypro), 218 F.3d 1070, 1073 (9th Cir. 2000); Sewell v. MGF Funding, Inc. (In re Sewell), 345 B.R. 174, 178 (9th Cir. BAP 2006). We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we "determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." Id. De novo means review is independent, with no deference given to the trial court's decision. See First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558,

561 (9th Cir. 2006). Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. <u>Hinkson</u>, 585 F.3d at 1262 & n.20. We must affirm the bankruptcy court's factual findings unless those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" <u>Id.</u>

## VI. DISCUSSION

## A. Claims alleged against BofA[20] and ReconTrust

### 1. The FDCPA claims

The bankruptcy court dismissed Appellants' FDCPA claims against BofA and ReconTrust when it determined that Appellants failed to identify a genuine issue of disputed fact and the SJ Movants were entitled to judgment as a matter of law on their SJ Motion.[21] Appellants argue the bankruptcy court erred. We disagree.

---

[20] For simplicity we refer to BofA in lieu of BAC hereinafter.

[21] In the bankruptcy court, Appellants objected to Peloso's Declaration based on hearsay and lack of qualification to testify and objected to the documents submitted with Peloso's Declaration based on lack of authentication. They also argued that they had not been allowed to do discovery and sought a continuance to allow them more time. The bankruptcy court determined that the testimony and documents offered by Mr. Peloso "would be admissible at trial." Hr'g Tr. (Sept. 28, 2013) at 7:21-22. The bankruptcy court found that Mr. Peloso had personal knowledge based on business records and also "would qualify as an expert to testify about his review of BofA's documents and records under FRE 702." <u>Id.</u> at 8:5-7. It further found that most of the documents were self-authenticating, even if not business records. <u>Id.</u> at 8:8-13. As to the request for more time for discovery, the bankruptcy court denied the request. Appellants had from April 22, 2012 to the August 17, 2012 discovery cutoff to conduct discovery and failed to support a request for continuance. <u>Id.</u> at 9:8-14. Appellants did not raise any issue on appeal with respect to any of these rulings, and we consider them waived.

### a. Standards

Federal Rule of Civil Procedure 56(c) (incorporated into the Bankruptcy Rules under Bankruptcy Rule 7056) provides that a party may move for summary judgment when there is no genuine issue as to a material fact and the moving party is entitled to a judgment as a matter of law. Any "genuine issue" is one where, based on the evidence presented, a fair-minded jury could return a verdict in favor of the nonmoving party on the issue in question. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991). A "material fact" is one the resolution of which could affect the outcome of the case. Anthes v. Transworld Sys., Inc., 765 F. Supp 162, 165 (D. Del. 1991).

All justifiable inferences must be drawn in favor of the non-moving party. Anderson, 477 U.S. at 255. Likewise, all evidence must be viewed in the light most favorable to the non-moving party. Lake Nacimiento Ranch Co. v. Cnty. of San Luis Obispo, 841 F.2d 872, 875 (9th Cir. 1987). A party responding to a summary judgment motion may not rest upon mere allegations or denials in its pleadings. Rather the party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "Legal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

If the non-moving party bears the ultimate burden of proof on an element at trial, as do the Appellants here, that party

- 18 -

must make a showing sufficient to create a genuine issue with respect to that element in order to survive a motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### b. Debt collectors

The FDCPA provides that: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Here, the bankruptcy court found that on the record before it, the admissible evidence was insufficient to create a genuine issue that BAC was a debt collector under the FDCPA. Likewise, the bankruptcy court was unable to conclude from the admissible evidence that ReconTrust was a debt collector.

Several months after the bankruptcy court ruled on the SJ Motion, the Ninth Circuit published its opinion in Schlegel v. Wells Fargo Bank, N.A. (In re Schlegel), 720 F.3d 1204 (9th Cir. 2013). In In re Schlegel, the Ninth Circuit makes clear that a "debt collector" under the FDCPA must have debt collection as the principal purpose of its business. 720 F.3d at 1209. Neither side here presented evidence regarding the defendants' principal businesses. Appellees argued that they are not debt collectors under the FDCPA and presented evidence that they merely acted as a servicer and its agent under the authority of the FannieMae Guidelines. The ultimate burden of proof on this critical element, however, rested with the Appellants. As such, in response to the SJ Motion, Appellants were required to come forward with a showing sufficient to create a genuine issue of fact as to that element in order to survive the SJ Motion. See Celotex Corp., 477 U.S. at 322-23. They did not.

- 19 -

In effect, the bankruptcy court shifted the burden of proof on this element to the Appellees. As the bankruptcy court nonetheless granted summary judgment on other grounds, we conclude that the error is harmless. See, e.g., Fed. R. Civ. P. 61 (incorporated into bankruptcy proceedings by Rule 9005).

### c. False or misleading representations/unfair practices

The bankruptcy court granted the SJ Motion on the admissible evidence contained in Peloso's Declaration and self-authenticating documents, establishing that:

> [BofA], through its own agent, ReconTrust, had possession of the [Note] and the authority of its principal, [and] it was the holder of the [Note] and was an authorized beneficiary under RCW 61.24.005(2). Hr'g Tr. (Sept. 28, 2012) at 17:10-15.
>
> Because [BofA] was an authorized beneficiary it could properly appoint ReconTrust as successor trustee and direct ReconTrust to issue [the Notice of Default] pursuant to RCW 61.24.030. Id. at 17:16-19.
>
> RCW 61.24.031 provides that an authorized agent may issue a notice of default under RCW 61.24.010(8). Id. at 17:20-22.

The bankruptcy court found that "because the issuance of the appointment of successor trustee and the notice of default were authorized and proper, there are no false or misleading representations under [] 15 U.S.C. § 1692e or unfair practices under 15 U.S.C. 1692f." Hr'g Tr. (Sept. 28, 2012) at 19:1-5. Therefore, the bankruptcy court granted the SJ Motion. We find no error in either the bankruptcy court's legal conclusions or its determination that Appellants failed to show the existence of disputed facts that would require trial.

Appellants failed below to present admissible evidence of a

genuine issue of material fact in dispute, and, on appeal, they do not argue any specific error made by the bankruptcy court. In defense of the SJ Motion, Appellants argued the plausibility of their claims, rather than submitting evidence to support the elements of the claims on which they bore the ultimate burden of proof. Therefore, we conclude that the bankruptcy court did not err when it granted the SJ Motion.

The undisputed facts determined in connection with the SJ Motion and our conclusion that the bankruptcy court committed no error necessarily inform our analysis of the Civil Rule 12(b)(6) dismissals of the Appellants' other claims alleged against BofA and ReconTrust.

**2.   CPA claims**

The bankruptcy court dismissed the CPA claims alleged against BofA and ReconTrust pursuant to the Second Dismissal Order.

A motion to dismiss under Civil Rule 12(b)(6) challenges the sufficiency of the allegations set forth in the complaint. The court's review is limited to the allegations of material facts set forth in the complaint, which must be read in the light most favorable to the non-moving party, and together with all reasonable inferences therefrom, must be taken to be true. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). Thus, a court generally may not consider any material beyond the pleadings; however, material that is properly submitted as part of the complaint may be considered. Hal Roach Studios, 896 F.2d at 1555.

A complaint must contain either direct or inferential

- 21 -

allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff must provide grounds for her entitlement to relief, which requires more than labels and conclusions; and the actions must be based on legally cognizable claims. <u>Twombly</u>, 550 U.S. at 555. The court, thus, need not accept as true mere recitals of a claim's elements, supported by conclusory statements; and the plausibility of a claim is context-specific on review of which the court may draw on its experience and common sense. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1950 (2009).

Under Washington law, private CPA claims require that the plaintiff establish five elements:

> (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) injury to a person's business or property; and (5) causation.

<u>Panag v. Farmers Ins. Co. of Wash.</u>, 166 Wn.2d 27, 37 (2009) (citing <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 780 (1986)).

In the SAC, Appellants alleged that actions taken by BAC and ReconTrust violated the Trust Deed Act and that such violations constituted per se violations of the CPA. As the bankruptcy court noted, the Trust Deed Act "contains a list of per se violations of the CPA at RCW 61.24.135,[22] which does not

---

[22] Revised Code of Washington § 61.24.135 provides that:

(continued...)

- 22 -

include any of the alleged acts in this case." Hr'g Tr. (April 6, 2012) at 11:8-11. Appellants made the same per se argument in connection with alleged violations of the FDCPA, however, they do not cite any applicable statutory provision, and we know of none.

The first two elements of a private CPA claim "may be established by a showing that (1) an act or practice which has a capacity to deceive a substantial portion of the public (2) has occurred in the conduct of any trade or commerce." Hangman Ridge Training Stables, Inc., 105 Wn.2d at 785-86. Appellants alleged that BAC and ReconTrust issued documents without the requisite authority in connection with Debtor's loan and the initiation of

---

[22](...continued)
(1) It is an unfair or deceptive act or practice under the consumer protection act, chapter 19.86 RCW, for any person, acting alone or in concert with others, to offer, or offer to accept or accept from another, any consideration of any type not to bid, or to reduce a bid, at a sale of property conducted pursuant to a power of sale in a deed of trust. The trustee may decline to complete a sale or deliver the trustee's deed and refund the purchase price, if it appears that the bidding has been collusive or defective, or that the sale might have been void. However, it is not an unfair or deceptive act or practice for any person, including a trustee, to state that a property subject to a recorded notice of trustee's sale or subject to a sale conducted pursuant to this chapter is being sold in an "as-is" condition, or for the beneficiary to arrange to provide financing for a particular bidder or to reach any good faith agreement with the borrower, grantor, any guarantor, or any junior lienholder.
(2) It is an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the consumer protection act, chapter 19.86 RCW, for any person or entity to: (a) violate the duty of good faith under RCW 61.24.163; (b) fail to comply with the requirements of RCW 61.24.174 [deposits into foreclosure fairness account]; or (c) fail to initiate contact with a borrower and exercise due diligence as required under RCW 61.24.031.

- 23 -

foreclosure. Appellants supported this assertion by alleging that FannieMae represented itself to be the holder, owner, or assignee of the loan, which could be determined to contradict the authority required of BAC and ReconTrust.

The bankruptcy court dismissed the CPA claims because it determined that even though Appellants adequately pled the first elements, they did not and could not allege the causation elements. In light of the undisputed facts subsequently established in connection with the SJ Motion on the FDCPA claims, we need not review the adequacy of the Appellants' causation allegations because they cannot plausibly plead deceptive acts by BofA and ReconTrust. As discussed earlier, the undisputed evidence established that BofA, as holder of the Note, was an authorized beneficiary under the Deed of Trust Act; BofA could properly appoint ReconTrust as successor trustee; and the Notice of Default was issued by the duly appointed and authorized agent of BofA. Because the Appointment of Successor Trustee and Notice of Default were authorized and proper, the bankruptcy court found at summary judgment that there were no false or misleading representations or practices.[23] Therefore, the record in

_____

[23] In oral argument, and indirectly in the appellate brief, counsel for Appellants argued that the representation in the Notice of Default that BofA was both owner and servicer constitutes a misleading statement actionable by Appellants. Appellants did not so allege in their various forms of the complaint; the bankruptcy court appropriately found no material issues of disputed fact as to the validity of the Notice of Default; and we conclude that the discrepancy is not material nor could Appellants plausibly plead otherwise. See Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010) ("[I]mmaterial statements, by definition, do not affect a consumer's ability to make intelligent decisions."). We recognize Donohue discussed

(continued...)

- 24 -

connection with the bankruptcy court's findings for BofA and ReconTrust on the FDCPA claims, equally supports dismissal of the CPA claims. Thus, even if we were to conclude that the bankruptcy court erred in its causation analysis, such error would be harmless. See Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008) (appellate court may affirm on any basis supported by the record).

### 3. Wrongful Foreclosure Claim[24]

In the FAC, Appellants asserted that based on the invalidity of the MERS Assignment, the documents signed and actions taken by BofA and ReconTrust were not authorized and, thus, violated the Trust Deed Act. Notably, however, they did not plead that a trustee sale was noticed or a foreclosure sale completed; nor do they plead any facts to indicate that the Notice of Default, which was the only enforcement action allegedly taken under the

[23](...continued) materiality in the context of the FDCPA, but conclude that the reasoning is appropriate to our analysis here. Washington law makes clear that the distinction between an owner of the Note and a beneficiary who is a holder of the relevant note is not significant. See Wash. Rev. Code § 61.24.030(7) (requiring, prior to foreclosure of residential real estate, that the trustee have proof that the beneficiary owns the note, but also providing that a statement that the beneficiary is a note holder suffices). Indeed, at least for purposes of RCW 61.24.030, BofA was the owner.

[24] Appellants subsequently did not include a wrongful foreclosure claim in the SAC. Appellees on appeal argue that Appellants thus abandoned the claim, citing Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997) ("It is the law of this circuit that a plaintiff waives all claims alleged in a dismissed complaint which are not realleged in an amended complaint."). This "Forsyth rule" was overruled, in part, by the Ninth Circuit in Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012), specifically as to claims dismissed with prejudice and without leave to amend. Here, the bankruptcy court dismissed the Wrongful Foreclosure Claim with prejudice to the extent Appellants sought damages or permanent injunction.

Trust Deed, was improperly issued.[25]

Appellants sought a permanent injunction against all of the defendants and generally prayed for a judgment for damages, alleging simply that Debtor lost time while pursuing her actions. The bankruptcy court held that the Trust Deed Act provided no support for either a permanent injunction or damages, and dismissed the Wrongful Foreclosure Claim with prejudice accordingly. On appeal, Appellants argue that the Bain opinion establishes that they adequately pled the Wrongful Foreclosure Claim in all respects, and that the bankruptcy court erred by relying on case law that is "no longer good authority" after Bain.

### a. Permanent injunctive relief

Initially we note that none of the questions addressed in Bain[26] pertained to injunctive relief under the Trust Deed Act, although the court extensively discussed the Trust Deed Act generally.[27] The Trust Deed Act allows restraint of a

---

[25] Appellants did not allege that BAC was not the holder of the Note at the time the Notice of Default was issued. See Wash. Rev. Code 61.24.031; and Reinke v. Northwest Trustee Services, Inc., 2011 Bankr. LEXIS 4142 at *32 (Bankr. W.D. Wash. 2011). Nor did Appellants allege that Debtor was not in default.

[26] We also note that Bain solely addressed questions regarding MERS and its participation in a foreclosure context. We address Appellants' alleged claims against MERS separately below.

[27] The two cases that generated the certified questions to the Washington Supreme Court in Bain both involved requests for injunctions to stop foreclosures initiated by MERS and damages under the CPA, among other things. Bain, 175 Wn.2d at 90. Nonetheless, the merits of the underlying cases were not before the Washington Supreme Court, and the opinion contains no discussion or analysis pertaining to the injunctive relief
(continued...)

- 26 -

foreclosure sale on any "proper legal or equitable ground." Wash. Rev. Code § 61.24.130. Appellants did not allege that a sale was noticed and they did not merely seek to restrain a sale, if one were noticed. Instead, Appellants sought a permanent injunction.[28] Bain provides no support for such relief, Appellants cited no other legal authority for such relief, and we located none. The bankruptcy court did not err when it dismissed the Wrongful Foreclosure Claim to the extent Appellants sought a permanent injunction.

### b. Monetary damages for wrongful initiation of foreclosure

In January 2011, when the bankruptcy court dismissed the Wrongful Foreclosure Claim to the extent Appellants sought damages, it did so based on well-established legal authority, both federal and state. The bankruptcy court referred to and specifically agreed with the then-recent decision by Judge Overstreet in Reinke v. Northwest Trustee Services, and the cases cited therein, which held that the Trust Deed Act does not authorize a civil action for damages for wrongful initiation of foreclosure. See, e.g. Vawter v. Quality Loan Serv. Corp., 707 F.Supp.2d 1115, 1123 (W.D. Wash. 2010); and Brown v. Household Realty Corp., 146 Wn. App. 157, 189 P.3d 233, 240

---

[27](...continued) requested therein.

[28] In its oral ruling, after determining that a permanent injunction would not be appropriate, the bankruptcy court analyzed whether the FAC supported a request for any restraint of the foreclosure sale. The bankruptcy court found the FAC deficient as it contained no allegations that would indicate the Notice of Default was issued incorrectly.

(2008).

On appeal Appellants argue, primarily based on <u>Bain</u>, that the case law relied upon by the bankruptcy court is no longer good law on the efficacy of a wrongful initiation of foreclosure damages claim. <u>Bain</u>, however, does not speak to the issue at all. We reviewed the posture of the Washington federal and state courts on this issue and concluded that currently the courts are not of one mind.[29] In point of fact, at least one district court recently abstained from ruling on the question of whether "a plaintiff can recover damages under the [Trust Deed Act] for an initiated but uncompleted trustee sale." <u>See</u> <u>Zhong v. Quality Loan Service Corp.</u>, 2013 U.S. Dist. LEXIS 145916 *11 (W.D. Wash. Oct. 7, 2013). In <u>Zhong</u>, the district court acknowledged that the issue was submitted by an Order Certifying Question to the Washington Supreme Court in <u>Frias v. Asset Foreclosure Servs., Inc.</u>, No. 13-cv-0760 (W.D. Wash. Sept. 25, 2013).[30]

We need not decide this issue here because even if we were to determine that the bankruptcy court erred at the Civil Rule 12(b)(6) level, such error would be harmless in light of the record and determinations made by the bankruptcy court later in

---

[29] By way of example: In <u>Stafford v. Sunset Mortg., Inc.</u>, 2013 WL 1855743 at *2 (W.D. Wash. Apr. 29, 2013), the district court noted that "[a]s this Court has repeatedly ruled, Washington law does not recognize a claim for wrongful initiation of a non-judicial foreclosure when no sale occurs." Whereas, in <u>Walker v. Quality Loan Service Corp.</u>, 176 Wn. App. 294, 308 P.3d 716, 724 (2013), the state court disagreed with <u>Vawter</u> and held that "a borrower has an actionable claim against a trustee who, by acting without lawful authority or in material violation of the DTA, injures the borrower, even if no foreclosure sale occurred."

[30] The matter was assigned Supreme Court No. 89343-8 on September 30, 2013, and the briefing schedule set.

- 28 -

connection with the SJ Motion on the FDCPA claims. See Shanks v. Dressel, 540 F.3d at 1086 (appellate court may affirm on any basis supported by the record). Appellants based their FDCPA claims on the same allegedly false and misleading acts and documents on which they based their Wrongful Foreclosure Claim.

As discussed earlier, the undisputed facts established that the Notice of Default was issued by the duly appointed and authorized agent of BofA: ReconTrust. See Wash. Rev. Code 61.24.031 (an authorized agent may issue a notice of default under RCW 61.24.010(8)). And, FannieMae's servicer, BofA, was an authorized beneficiary under the Deed of Trust Act as holder of the endorsed-in-blank Note (in the custody of BofA's agent ReconTrust). Therefore, the record in connection with the bankruptcy court's findings for BofA and ReconTrust on the FDCPA claims, equally supports a decision for them on the Wrongful Foreclosure Claim.

**4.    Quiet Title Action**

The bankruptcy court dismissed the Quiet Title Action without prejudice. Appellants did not re-plead a claim for quiet title in the SAC. Appellants, therefore, waived any claim for quiet title. See Lacey, 693 F.3d at 928 (a plaintiff waives claims alleged in a dismissed complaint by not re-pleading such claims in an amended complaint when dismissal is without prejudice).

And if the merits are considered, we also determine that the bankruptcy court did not err. On appeal, Appellants do not allege that they were barred from re-pleading a quiet title

action. Rather, they merely repeat the arguments made to the bankruptcy court. They argue that MERS could assign neither the Trust Deed nor the Note – but they also argue inconsistently that by assigning the Trust Deed without assigning the Note, MERS caused the irreparable severance of the Note from the Trust Deed. Appellants' argument is internally inconsistent and incorrect as a matter of law, because the security follows the obligation secured. See In re Jacobson, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009). "This principle is neither new nor unique to Washington: '[T]ransfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.'" Id. (quoting Carpenter v. Longan, 83 U.S. 271, 275 (1872)).

A quiet title action is equitable and designed to resolve competing claims of ownership. Kobza v. Tripp, 105 Wn. App. 90, 95 (2001). Where such an action is against a purported lender or otherwise involves a deed of trust, a plaintiff must also allege facts demonstrating they satisfied their obligations under the deed of trust. Elene-Arp v. Federal Home Finance Agency, 2013 WL 1898218 at *4 (W.D. Wash. 2013). Here, the Quiet Title Action did not involve either title to or ownership of property. Instead, Appellants sought to extinguish the lien of the Trust Deed, but failed to allege any facts regarding the status of their obligations under the Trust Deed or Note. Therefore, Appellants failed to allege sufficient facts in the FAC to plausibly allege a claim for quiet title and, thus, the bankruptcy court did not err when it dismissed the Quiet Title

Action.

### 5. Abuse of Process

The bankruptcy court also dismissed the Abuse of Process Claim pursuant to the Second Dismissal Motion. Appellants based their Abuse of Process claim in the SAC on virtually the same, although re-phrased, allegations on which they based their Wrongful Foreclosure Claim in the FAC. To the "abuse of the foreclosure process" and "improper initiation of foreclosure proceedings" allegations, Appellants added allegations that ReconTrust breached the duty of good faith it owed, as successor trustee, to Debtor and that ReconTrust and BofA violated the statutory prohibition against the same entity serving as trustee and beneficiary under the same deed of trust, based on their common corporate direction and control. None of such allegations, taken as true for purposes of the Civil Rule 12(b)(6) evaluation, meet the pleading requirements for an abuse of process claim.

In evaluating an abuse of process claim, "the crucial inquiry is whether the judicial system's process, made available to insure the presence of the defendant or his property in court, has been misused to achieve another, inappropriate end." <u>Sea-Pac Co. v. United Food and Comm'l Workers Local Union 44</u>, 103 Wn.2d 800, 805 (1985) (citation omitted). The elements of an abuse of process claim, are,

> (1) existence of an ulterior purpose – to accomplish an object not within the proper scope of the process, – and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings.

Id. (citation omitted). And of particular import here, the defendant must have employed some process in the technical sense, meaning process issued by the Washington courts. Id. at 806-07.

Appellants did not allege any ulterior purpose – they alleged that the actions violated the Trust Deed Act. And, critically, they do not allege any use of the judicial process in the allegedly improper initiation of non-judicial foreclosure. Therefore, the Abuse of Process Claim fails as a matter of law and was properly dismissed. The bankruptcy court did not commit error.

**B.   Dismissal of claims against MERS**

**1.   Dismissal of the FDCPA claims against MERS**

The bankruptcy court dismissed the FDCPA claims against MERS in response to the Second Dismissal Motion because Appellants failed to allege any action by MERS that could potentially give rise to liability under the FDCPA. Appellants alleged only that MERS executed the MERS Assignment. The MERS Assignment solely purported to transfer MERS's interest in the Trust Deed and the Note to BofA. As such, it was not an attempt to collect a debt and, therefore, could not violate any provision under the FDCPA, as a matter of law.[31] We find no error in the bankruptcy court's decision on this point.

**2.   Dismissal of the CPA claims against MERS**

The bankruptcy court also dismissed the CPA claims against

---

[31] Appellants did not identify the bankruptcy court's denial of leave to amend as an issue in this appeal, nor did they include any legal argument regarding leave to amend. We therefore consider the Appellants to have waived review on this point.

MERS in the Second Dismissal Order. On appeal, Appellants rely heavily on Bain as authority to establish that MERS may be held liable for violations of the CPA – but Appellants seek to prove too much through Bain.

In Bain, the court held that the mere listing of MERS on a deed of trust is not itself an actionable injury under the CPA. 175 Wn.2d at 120. While the Bain court was unwilling to find that characterizing MERS as a beneficiary was per se deceptive, it held that MERS's purported action as a beneficiary presumptively meets the first element of a CPA violation[32]; however, ultimately a homeowner must produce evidence on each element required to prove a CPA claim. Id.

Whether a practice is unfair or deceptive is a question of law for the court to decide – if the parties do not dispute their conduct. Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 74, (2007). In the SAC, Appellants lump together their allegations of "unfair and deceptive acts" taken by BofA, ReconTrust, and MERS, as a group. Review of these allegations, in light of the subsequently determined undisputed facts, results in our conclusion that Appellants failed to adequately plead an unfair or deceptive act by MERS.

Appellants alleged: (a) misrepresentation as to the true holder of the obligations; (b) unlawful and unauthorized

---

[32] In Bain, MERS, acting as beneficiary, purported to appoint successor trustees who initiated foreclosure proceedings. Bain, 175 Wn.2d at 89. Here, the only foreclosure action taken consisted of the Notice of Default issued by ReconTrust, which was duly appointed by BofA, not MERS; and BofA was the duly authorized servicer for the holder of the Note.

- 33 -

declaration of default; (c) unlawful assignment of the Note from MERS to BofA; (d) use of "robo-signers"[33]; (e) unlawful appointment of unqualified successor trustee; (f) unlawful initiation of non-judicial foreclosure proceedings; and (g) "other misrepresentations." Among these alleged actions, conceivably only (c) is plausibly applicable to MERS – as MERS executed the MERS Assignment;[34] and under <u>Bain</u>, MERS is not a lawful beneficiary under the Trust Deed Act. Appellants fail, however, to plausibly allege any injury proximately resulting from the MERS Assignment. The alleged injury, consisting of Debtor's loss of time for business and personal matters while she consulted legal counsel to address legal threats and loss of her home, is not plausibly related to the MERS Assignment. The legal threat and the possibility of losing her home could only relate to the Notice of Default, not the MERS Assignment. Appellants pled no direct causal link between the MERS Assignment and the alleged injuries. Therefore, Appellants fail to adequately plead a claim against MERS under the CPA, and dismissal was not error.

### 3. Wrongful Foreclosure Claim, Quiet Title Action, and Abuse of Process Claim

Appellants included the Wrongful Foreclosure Claim and the Quiet Title Action in their FAC, and the bankruptcy court

---

[33] Appellants cite no legal authority that such signatures render the documents void; courts reject "robo-signing" as a cognizable legal theory; and there is nothing deceptive about using an agent to execute a document. <u>See</u> <u>Bain v. Metro Mortg. Grp., Inc.</u>, 2010 U.S. Dist. LEXIS 22690, 2010 WL 891585, at *6 (W.D. Wash. 2010).

[34] Execution of the MERS Assignment is the only action taken by MERS specifically alleged anywhere in the SAC.

dismissed both pursuant to the First Dismissal Order.  The FAC lacks any allegation that MERS took any action that impacted Debtor's right to the Property, and contains only conclusory allegations that MERS caused Debtor injury.  And, by failing to plead the Quiet Title Action in the SAC, Appellants waived the claim.

As to the Abuse of Process Claim, contained in the SAC and dismissed by the Second Dismissal Order, we apply the same reasoning discussed above as to BofA and ReconTrust.  The bankruptcy court committed no error by dismissing the Abuse of Process Claim as Appellants failed to adequately plead such a claim as to any defendant.

**C.    Denial of Civil Rule 60(b) Motion**

Appellants stated the issue challenging the bankruptcy court's denial of their Civil Rule 60(b) Motion as follows:

> Did the trial court err in denying Appellants' Motion for Relief from the trial court's Orders of April 6, 2012 and October 2, 2012, dismissing Appellant's claims for wrongful foreclosure procedures set forth in RCW 61.24, et seq.?

Appellants' Opening Brief at 1.

In addition to factual problems with the issue statement itself,[35] Appellants fail to present any argument as to how the bankruptcy court abused its discretion in denying Civil Rule

---

[35]    The issue statement misstates the effect of the orders to which it refers.  The April 6, 2012 order (relating to the SAC) did not dismiss the Wrongful Foreclosure Claim.  The Wrongful Foreclosure Claim was dismissed by the January 10, 2012 order (relating to the FAC).  The October 2, 2012 disposition is the Final Judgment that is on appeal.  Appellants did not seek relief from the Final Judgment, other than by filing the Notice of Appeal.

60(b) relief.  Therefore, this issue has been waived.  See City of Emeryville v. Robinson, 621 F.3d at 1261.[36]

## VII.  CONCLUSION

Based on the foregoing, we AFFIRM.

---

[36]  Even if the Panel were to review the bankruptcy court's denial of the requested relief under Civil Rule 60(b), which was brought on the alleged grounds that the intervening opinion by the Washington Supreme Court in Bain "vitiated" the case authority and reasoning on which the bankruptcy court based its denial, we would affirm.  The bankruptcy court correctly identified the applicable legal standard, citing Phelps v. Alameida, 569 F.3d 1120 (9th Cir. 2009); and the record supports the logical and reasonable conclusion that the bankruptcy court "did not rely on any cases that would have been partially overruled by Bain, and [ ] did not make any determinations that would be changed following Bain."  Hr'g Tr. (Sept. 28, 2012) 5:22-25, 6:1.  In Bain, the Washington Supreme Court answered three certified questions.  First, it concluded that "if MERS does not hold the note, it is not a lawful beneficiary." 175 Wn.2d at 89.  It was unable to determine the "'legal effect' of MERS not being a lawful beneficiary" on "the record and argument before" it.  Id.  And finally, it concluded that a homeowner "may" have a CPA claim "based upon MERS representing that it is a beneficiary," but such a determination would "turn on the specific facts of each case."  Id.  Here, on the First Dismissal Motion, the bankruptcy court "dismissed the abuse of process claim because the plaintiffs did not allege the existence of an ulterior purpose or an act that uses the judicial process" [Hr'g Tr. (Sept. 28, 2012) at 6:10-13]; "dismissed the FDCPA claim against MERS because the plaintiffs did not allege an action by MERS that could give rise to liability under the FDCPA" (Id. at 6:14-16); and "dismissed the Consumer Protection Act claim because the plaintiffs had not pled any act of the defendants which was causally linked to the injury of the plaintiffs" (Id. at 6:17-20).  Thus, even on the merits, we conclude that the bankruptcy court did not abuse its discretion by denying the Civil Rule 60(b) Motion.

- 36 -